**MEEKINS v. BOX**

[152 N.C. App. 379 (2002)]

_____

MARCIA C. MEEKINS, Plaintiff v. KIM M. BOX, Defendant

No. COA01-627

(Filed 20 August 2002)

### 1. Trusts— resulting—remedy not requested—notice

The trial court did not err by finding that plaintiff was entitled to a resulting trust on defendant's interest in the pertinent property even though plaintiff did not specifically request this remedy in her original complaint, because the evidence was sufficient to

support the trial court's finding that the pleadings, the motion to amend, and the evidence gave notice to defendant that a resulting trust was a possible remedy, including evidence that: (1) plaintiff testified that the money for the down payment for the house came from gifts from her family and from the sale of stock that plaintiff had inherited from her family; (2) plaintiff further testified that defendant did not contribute any amount to the down payment; and (3) plaintiff testified that both she and defendant intended that the house be titled solely in plaintiff's name so that plaintiff could qualify for aid in closing costs from her employer.

## 2. Trusts— resulting—burden of proof

Although defendant contends the trial court erred by failing to state in its judgment what burden of proof it used in its decision granting a resulting trust on defendant's interest in the pertinent property, the trial court was not required to do so because: (1) there is no statutory or general requirement that the trial court state in its judgment the burden of proof it used; and (2) no presumption of a gift applied.

## 3. Fraud— credit cards—findings of fact—intentionally deceptive conduct

The trial court's findings of fact supported its conclusion that plaintiff was entitled to damages for fraud based on defendant's actions of acquiring credit cards in plaintiff's name without plaintiff's knowledge, falsely assuring plaintiff that defendant was also liable on the cards, and incurring significant charges in plaintiff's name on the credit cards, because: (1) in addition to concealment of material facts, the trial court's findings establish that defendant's actions were repeated and deliberate, and that defendant's continued pattern of deceit included making false statements to plaintiff, to creditors, to the court, and to law enforcement officers; and (2) even though the findings do not include a specific finding that defendant acted with intent to deceive, there is no other reading of the findings but to find intentionally deceptive conduct.

## 4. Unjust Enrichment— failure to provide evidence of value of improvements

The trial court did not err by concluding as a matter of law that defendant failed to establish her counterclaim for unjust enrichment, because neither defendant's testimony nor the testimony of her father provided evidence of the value of the improve-

ments to the pertinent property, which is a necessary element to recover for unjust enrichment beyond nominal damages.

Appeal by defendant from a judgment entered 26 September 2000 by Judge V. Bradford Long in Moore County District Court. Heard in the Court of Appeals 25 March 2002.

*Robbins, May, & Rich, L.L.P., by P. Wayne Robbins, for the plaintiff-appellee.*

*Rich Costanza, for the defendant-appellant.*

HUDSON, Judge.

Defendant appeals a judgment which: (1) orders that a resulting trust in favor of the plaintiff be issued upon defendant's interest in real property held by the parties; (2) awards damages against her for fraud; and (3) denies her counter-claim for unjust enrichment. We affirm.

The evidence presented at trial tended to show the following: prior to the lawsuit, the parties had been in a romantic relationship for approximately six years, from 1993 to 1999. They lived together during the relationship, moving from state to state to meet the demands of plaintiff's employment. In October 1997, the parties moved to North Carolina. Throughout the course of the relationship, plaintiff remained steadily employed, first with Meisner Marine Construction and then with the Army Corps of Engineers. Defendant held jobs sporadically, if at all. The parties held a joint bank account into which plaintiff deposited her salary.

Plaintiff testified that during the parties' relationship, the defendant handled all of their finances. In 1995, plaintiff gave defendant an unlimited power of attorney so that the defendant would be able to handle arrangements for renting plaintiff's house in Jacksonville, Florida. At some point, plaintiff also granted a half interest in the house in Florida to defendant. Defendant applied for credit cards and told plaintiff that the cards were joint accounts. Plaintiff later found that defendant had not listed herself as jointly liable for payment, but that defendant did list herself as authorized to use the accounts. Defendant simply signed plaintiff's name on the credit card, rather than applying as attorney-in-fact.

In the summer of 1998, the parties decided to purchase a house in Whispering Pines, North Carolina. At defendant's suggestion, plaintiff

agreed to purchase the house solely in plaintiff's name, so that plaintiff's employer would reimburse her for closing costs. At the closing, which was arranged by defendant, plaintiff simply signed the papers but did not read them. Plaintiff did not realize until later that, contrary to her agreement with defendant, the deed to the house was issued in both of their names. The deed of trust to the mortgage, however, carried only plaintiff's name, making her solely liable for payments on the house. The plaintiff funded all of the down payment with cash gifts from her family, and by selling stock that she inherited from her family. Defendant did not contribute to the down payment or closing costs.

By March of 1999, plaintiff and defendant were having difficulties in their relationship. At around that time, plaintiff discovered that both names were on the deed to the house. Plaintiff moved out for a time, then moved back in when defendant promised her that she was leaving. When defendant did not leave, plaintiff moved out again on 24 April 1999.

On 22 July 1999, plaintiff filed this action alleging in her complaint that the deed to the house had been issued in both parties' names by mistake, that defendant had obtained credit cards and incurred numerous charges on them using plaintiff's name without permission, and requesting that the court reform the deed and award her damages for the unauthorized charges. On 27 September 1999, the defendant answered, denying the allegations of plaintiff's complaint, raising various affirmative defenses and asserting a counterclaim against plaintiff for unjust enrichment, alleging that if plaintiff were given sole ownership of the house, she would be unjustly enriched by defendant's contributions and improvements to the property. The court heard the case without a jury in May 2000, and on 14 August 2000, plaintiff moved to amend her complaint to request the remedy of a resulting trust. On 25 September 2000, the Honorable V. Bradford Long entered a judgment granting plaintiff a resulting trust on defendant's interest in the property, granting plaintiff damages for fraud and denying defendant's counterclaim for unjust enrichment. Defendant appeals.

[1] Defendant argues that the trial court erred in finding that the plaintiff was entitled to a resulting trust when the plaintiff did not specifically request this remedy in her original complaint. "A resulting trust arises 'when a person becomes invested with the title to real property under circumstances which in equity obligate him to hold the title and to exercise his ownership for the benefit of

another . . . .' " *Mims v. Mims,* 305 N.C. 41, 46, 286 S.E.2d 779, 783 (1982) (quoting *Teachey v. Gurley,* 214 N.C. 288, 292, 199 S.E. 83, 86-87 (1938)). For example, if one person provides the consideration for a purchase of land, but title to the land is taken in the name of another, a resulting trust arises in favor of the former. *See id.* "In such a situation . . . a resulting trust commensurate with his interest arises in favor of the one furnishing the consideration." *Cline v. Cline,* 297 N.C. 336, 344, 255 S.E.2d 399, 404-05 (1979). Here, the trial court found that the plaintiff furnished the down payment on the home, was solely liable for and made all the payments on the mortgage, but that the deed to the home named plaintiff and defendant as owners. The court then "concluded as a matter of law that the Defendant obtained title to the real property set out above under circumstances which obligate the Court inequity [sic] to order that a resulting trust will be issued over the title of the property in favor of the plaintiff."

Defendant argues that the court erred in granting a resulting trust because plaintiff did not specifically request this remedy in her complaint. Plaintiff instead requested "[t]hat the Deed to the property in question be reformed removing the name of the Defendant from the title and the Defendant be ordered to vacate the premises." Plaintiff alleged in her complaint that the deed had been placed in both names "by mistake." Plaintiff moved to amend her complaint to conform to the evidence, and to add a specific prayer for a resulting trust pursuant to Rule 15(b) of the North Carolina Rules of Civil Procedure. Rule 15(b) provides in pertinent part:

> When issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, either before or after judgment, but failure so to amend does not affect the result of the trial of these issues.

N.C.R. Civ. P. 15(b) (2001). Normally, "when a non-objecting party allows evidence to be presented at trial outside the scope of the pleadings, the pleadings are deemed amended to conform to the evidence, and no formal amendment is required." *McDevitt v. Stacy,* 148 N.C. App. 448, 455, 559 S.E.2d 201, 208 (2002). "Where the evidence which supports an unpleaded issue also tends to support an issue properly raised by the pleadings, however, failure to object does not

amount to implied consent to try the unpleaded issue." *Members Interior Construction v. Leader Construction Co.*, 124 N.C. App. 121, 124, 476 S.E.2d 399, 402 (1996), *disc. review denied*, 345 N.C. 745, 485 S.E.2d 56 (1997). The record does not reflect that defendant responded to the motion to amend, and defendant has not addressed this point in her brief to this Court. However, defendant does take exception to the trial court's finding as fact that "[t]he evidence presented at trial and the pleadings of the Plaintiff place the Defendant on notice that the Plaintiff is entitled to request a resulting trust" as a remedy. Defendant also excepts to the trial court's conclusions of law based on this finding.

Our standard of review where the trial court sits without a jury is whether competent evidence supports the trial court's findings, and whether the findings support the conclusions of law. *See In re of Azalea Garden Bd. and Care, Inc.*, 140 N.C. App. 45, 535 S.E.2d 388 (2000).

In *Mims*, the Supreme Court stated that:

Plaintiff is not precluded from relying on a resulting trust because of deficiencies in his complaint. Although plaintiff does not expressly refer to a resulting trust in his complaint, and prays for reformation of the deed on the ground of mutual mistake, he has pled sufficient facts to state a claim giving rise to a resulting trust.

*Mims*, 305 N.C. at 59, 286 S.E.2d at 791. "In pleading a resulting trust it suffices to allege the ultimate facts as to who paid the consideration and to whom the conveyance was made." *Bowen v. Darden*, 241 N.C. 11, 14, 84 S.E.2d 289, 292 (1954). In *Mims*, the plaintiff alleged in his complaint that he " 'told the defendant that he would be furnishing all of the consideration for the purchase of this realty, that he was therefore buying it in his own right as his sole and individual property, and that it would be his and his alone.' " *Mims*, 305 N.C. at 59, 286 S.E.2d at 791.

In the case at hand, plaintiff alleged in her complaint: (1) defendant stated she did not want the house placed in her name; (2) the closing attorney informed the plaintiff that the title would be placed in her name; (3) the closing attorney placed title in the names of both plaintiff and defendant jointly; and (4) defendant has refused to make any payments on the property. Defendant argues that because plaintiff did not specifically allege in the complaint that defendant paid none of the consideration for the purchase of the property, that plain-

tiff did not allege sufficient facts to state a claim giving rise to a resulting trust. Therefore, defendant argues the trial court's choice of remedy was in error. We disagree.

Although the *Mims* Court noted that the plaintiff alleged facts in his complaint sufficient to state a claim, *Mims* was an appeal from a summary judgment ruling, and not from disposition of a motion to dismiss for failure to state a claim. In light of the procedural posture in *Mims*, the Court further provided that:

> In this context, particularly, "the nature of the action is not determined by what either party calls it." At summary judgment the nature of the action is determined *not only by the pleadings and the nature of the relief sought, but also by the facts* "which, on motion for summary judgment, are forecast by the evidentiary showing."

*Mims*, 305 N.C. at 61, 286 S.E.2d at 792 (internal citations omitted) (emphasis added). Thus, in determining that the plaintiff was entitled to a resulting trust, the *Mims* Court did not limit itself to the allegations of the complaint. Similarly, the trial court here considered not only the allegations and relief requested in the complaint, but also the other pleadings including the motion to amend, and evidence presented by the parties in choosing the remedy.

Thus the question for us on appeal of this issue is whether the evidence was sufficient to support the court's finding that the pleadings and the evidence gave notice to the defendant that a resulting trust was a possible remedy. The plaintiff testified that the money for the down payment on the house came from gifts from her family and from the sale of stock that plaintiff had inherited from her family. Plaintiff further testified that defendant did not contribute any amount to the down payment. Finally, plaintiff testified that both she and defendant intended that the house be titled solely in plaintiff's name so that plaintiff could qualify for aid in closing costs from her employer. We believe that this evidence, along with the pleadings and motion to amend, was sufficient to establish the elements of a resulting trust and to provide adequate notice to defendant that it was a possible remedy. Therefore, we conclude that the evidence supported the trial court's findings of fact, which in turn support the conclusion of law that a resulting trust was the proper remedy.

**[2]** Defendant next argues that the trial court erred in not stating in its judgment what burden of proof it used in its decision to grant a

resulting trust. We can find no authority to support defendant's argument. The case defendant cites in her brief, *In re Church*, 136 N.C. App. 654, 525 S.E.2d 478 (2000), involved the failure of a trial court to comply with a statutory requirement that grounds to terminate a biological parent's parental rights be shown by "clear, cogent and convincing evidence," and that the order so state. N.C. Gen. Stat. 7A-289.30(e), *repealed by* 1998 N.C. Sess. Laws 202, s.5 (now codified at N.C. Gen. Stat. 7B-807, 7B-1109 (2001)); *see also* In re Anderson, 151 N.C. App. 94, 564 S.E.2d 599 (2002). There is no such statutory requirement here, nor is there a general requirement that the trial court state in its judgment the burden of proof it used. Moreover, defendant bases this argument on the language of earlier holdings that plaintiff was required to show "clear, cogent and convincing" evidence to prove a resulting trust. *See, e.g.*, *Mims*, 305 N.C. at 57, 286 S.E.2d at 790; *Bass v. Bass*, 229 N.C. 171, 173, 48 S.E.2d 48, 49 (1948); *Bowen v. Darden*, 241 N.C. 11, 14, 84 S.E.2d 289, 292 (1954). However, this burden appears to have been imposed in those cases to overcome a presumption of gift existing at that time between a husband and wife or between family members. "When the presumption of gift is rebutted the effect is 'automatically to create a resulting trust' in favor of the party furnishing the purchase price." *Mims*, 305 N.C. at 58, 286 S.E.2d at 790 (quoting 5 Scott on Trusts, § 443 at 3345 (3d ed. 1967)). No such presumption of gift applies here. Even if a heightened burden of proof applied here, we are not persuaded that the trial court was obligated to state so in its judgment.

**[3]** Defendant next argues that the trial court's findings of fact did not support the conclusion that plaintiff was entitled to damages for fraud. On appeal, we review the trial court's conclusions of law *de novo*. *See Clark v. City of Asheboro*, 136 N.C. App. 114, 119, 524 S.E.2d 46, 50 (1999).

This Court has held that the "elements of fraud are: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) *made with intent to deceive*, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Allen v. Roberts Constr. Co.*, 138 N.C. App. 557, 532 S.E.2d 534 (2000), *disc. review denied*, 353 N.C. 262, 546 S.E.2d 90 (2000) (emphasis added).

"In order to constitute fraud there must be false representation, known to be false, or made with reckless indifference as to its truth, *and it must be made with intent to deceive.*" *Myers &*

*Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 568, 374 S.E.2d 385, 391, (1988), *reh'g denied*, 324 N.C. 117, 377 S.E.2d 235 (1989). "While the concept of a statement made with reckless indifference as to its truth . . . or the concept of concealment of a material fact have been held to satisfy the element of false representation, those concepts do not satisfy the element of a statement made with intent to deceive." *Id.*

Here, plaintiff alleges that the defendant acquired credit cards in the plaintiff's name without the plaintiff's knowledge, that the defendant falsely assured plaintiff that she (defendant) was also liable on the cards, and incurred significant charges in plaintiff's name on the credit cards. Plaintiff testified that while she knew about some of the cards, it was her understanding that defendant was transferring balances from old cards to new ones and getting rid of the old cards. It was also plaintiff's understanding that the total balance on all the cards was twenty thousand dollars ($20,000) and that she and defendant were jointly liable for the total amount. In fact, the total balance as of the time of the complaint was thirty-nine thousand, seven hundred eighteen dollars and nineteen cents ($39,718.19) and plaintiff was solely liable. Plaintiff further testified that defendant handled all of their finances and that plaintiff was unable to see the records of all of their credit card statements.

The trial court made extensive findings of fact concerning the plaintiff's credit card debt and defendant's actions, including that at the end of their relationship there were eight credit cards acquired by defendant in plaintiff's name; that plaintiff was unaware of four of them; and that "[o]ver the course of the relationship the Defendant deceived the Plaintiff by informing the Plaintiff at various times in the relationship that their credit card debt was $10,000.00 or less." In addition, the court found that defendant's testimony was not credible and that:

The Defendant engaged in a pattern of deceit over the course of the relationship with the Plaintiff:

a. The Defendant did not inform the Plaintiff of all of the credit card applications which were made in the Plaintiff's name using the Power of Attorney;

b. The Defendant did not execute the credit card applications as Power of Attorney for the Plaintiff but by executing the Plaintiff's name solely;

MEEKINS v. BOX

[152 N.C. App. 379 (2002)]

c. The Defendant did not list herself as a joint obligor on the credit cards although giving herself full access to the line of credit issued by the credit card, in fact informing the Plaintiff that they were joint obligors;

d. The Defendant at various times during the relationship removed the Plaintiff's mailbox key from her key chain;

e. The Defendant informed the Plaintiff that all financial records of the parties were maintained in a box located in the home;

f. When the Plaintiff became suspicious and checked the box there were no financial records of any meaning located in the box but only trash;

g. The Defendant deceived the Plaintiff by grossly underestimating the number and amount of the credit card bills and by informing the Plaintiff that the credit card bills could be paid off by the casualty settlement over the fire in the state of Alabama;

h. The Defendant received all statements of the credit cards with very limited exceptions the Plaintiff never saw the credit card statements and as set out above would occasionally go to the mailbox to find that her mailbox key had been removed.

i. The Defendant would then return the mail box key to the Plaintiff stating that she had had a need to borrow the mail box key;

j. At the separation of the parties the total credit card debt balance was approximately $39,700;

k. When the Plaintiff [sic] wrecked an automobile in Moore County as further evidence of her continued pattern of deceit, she informed a police officer investigating the accident that her employment was [as] a counselor;

l. There was no evidence produced that the Defendant had ever been a counselor or that she was doing this at the time of the citation.

The court's findings in this case go beyond mere concealment of facts. They establish, in addition to concealment of material facts, that defendant's actions were repeated and deliberate, and that

defendant's "continued pattern of deceit" included making false statements to the plaintiff, to creditors, to the court and to law enforcement officers. Even though the findings do not include a specific finding that defendant acted with intent to deceive, we are unable to read these findings as revealing anything but intentionally deceptive conduct. Under these unusual circumstances, therefore, we hold that the findings of fact support the conclusion that defendant intended to deceive and did in fact deceive the plaintiff. We therefore affirm the trial court on this issue.

[4] Finally, defendant argues that the trial court committed reversible error in concluding as a matter of law that she failed to establish her counter-claim for unjust enrichment, when the court made no findings of fact concerning the issue. We disagree. This Court has held that "[g]enerally, when a trial court fails to make required findings of fact, the case must be remanded to the trial court for entry of findings. However, when the evidence in the record as to a finding is not controverted, remand is not required." *Pitts v. American Sec. Ins. Co.*, 144 N.C. App. 1, 18, 550 S.E.2d 179, 192 (2001) (citations omitted). Defendant claims that she "expended substantial sums of money, in an amount to be proved at trial" and "substantial labor" improving the house and property which she and the plaintiff both occupied. Ralph Warding, the defendant's father, testified at trial that he worked on the property and made various improvements. Neither defendant's testimony nor Mr. Warding's provided evidence of the value of the improvements, which is a necessary element to recover for unjust enrichment beyond nominal damages. *See Johnson v. Sanders*, 260 N.C. 291, 295, 132 S.E.2d 582, 586 (1963). Because defendant failed to meet her burden of producing evidence to prove the necessary elements of her claim, remand is not necessary. *See Arnold v. Ray Charles Enterprises, Inc.*, 264 N.C. 92,99, 141 S.E.2d 14, 19 (1965) (where the court fails to find an essential fact, but the record shows that the party having the burden of proving such fact has not introduced evidence sufficient to sustain such fact, remand would be futile).

In summary, we conclude that the trial court correctly determined that when plaintiff showed that she supplied all the purchase money for the real property, a resulting trust was created in her favor. The trial court did not err in granting plaintiff this remedy even though she did not specifically request it in her complaint, since the complaint and the evidence presented at trial, as well as the motion to amend, served as notice to the defendant that a resulting trust was

a possible remedy. We further hold that the trial court did not err in its conclusion of law that plaintiff was entitled to damages for fraud. Finally, we hold that while the trial court did not find facts to justify its conclusion of law denying defendant damages on her counterclaim for unjust enrichment, remand is not necessary.

Affirmed.

Chief Judge EAGLES and Judge BRYANT concur.