ALLEN WELTER AND WIFE, BARBARA WELTER, PETITIONERS-APPELLANTS v. ROWAN COUNTY BOARD OF COMMISSIONERS; ROWAN COUNTY ZONING BOARD OF ADJUSTMENT; AND MARION LYTLE, INDIVIDUALLY, RESPONDENTS-APPELLEES

No. COA02-1048

(Filed 16 September 2003)

**Zoning— non-conforming use—meaning of discontinued use— judicial review**

Whether a non-conforming go-cart track discontinued the non-conforming use during a lengthy period of repairs was remanded to the superior court for further review. The superior court should have exercised a de novo review of the ordinance's meaning of "discontinued use," and the case could not be disposed of by the Court of Appeals because the record was incomplete and further findings were required.

Appeal by petitioners from order dated 2 May 2002 by Judge Larry G. Ford in Superior Court, Rowan County. Heard in the Court of Appeals 17 April 2003.

*Jonathan S. Williams; and Ketner & Associates, by John W. (Jay) Dees, II, for petitioners-appellants.*

*The Holshouser Law Firm, by John L. Holshouser, Jr., for respondents-appellees.*

McGEE, Judge.

The Rowan County Board of Commissioners (Commissioners) adopted the Rowan County Zoning Ordinance (the zoning ordinance) on 19 January 1998, covering the unincorporated areas in Rowan County. Allen and Barbara Welter (petitioners) bought an existing go-

cart track, known as Millbridge Speedway (the speedway), as an investment in 1989. The speedway was built prior to the adoption of the zoning ordinance. Under the zoning ordinance, the speedway location was zoned rural agricultural. The speedway, therefore, became a nonconforming use under the zoning ordinance. Go-cart tracks are not specifically defined under the zoning ordinance but are covered under "amusement and recreational services" in the zoning ordinance. Article VII, Section 8, of the zoning ordinance provides that nonconforming uses "left vacant, abandoned or discontinued for a period of 360 days shall only be re-established as a conforming use." "Discontinue" is defined in the zoning ordinance as "to stop or cease the use of a property."[1]

In the spring of 1999, a tenant of the speedway left the premises damaged and unoccupied. Petitioners could not find an acceptable tenant for the summer of 1999. In the fall, a tenant agreed to lease the speedway if it was repaired. A lease was prepared covering the term from September 1999 to August 2002. The damage to the track was extensive and between December 1999 and the fall of 2000 petitioners paid for equipment, floodlights, cement work, scales, a new 7,000 gallon water tank, fencing, a public address system and plumbing, welding, and electrical services. Petitioner Allen Welter and others worked on weekends making the necessary repairs, which totaled approximately $30,000.00. Petitioner Allen Welter and the tenant testified that while the speedway was being repaired, the tenant, his family and about thirty friends, as well as petitioners and petitioners' grandchildren, practiced racing on the speedway. The two further testified that they held private races and "played" around on the speedway with go-carts. These were not public events. No other events, for which tickets were sold and which were open to the public, were held during this period. The tenant paid rent until it became clear the speedway would not be ready for the summer 2000 season.

Residents living near the speedway contacted the zoning administrator, Marion Lytle (Lytle), in 2000 to discuss prohibiting reopening of the speedway. These residents sent letters to Lytle stating that the last races at the speedway were in 1999. Petitioner Barbara Welter met with Lytle on 30 January 2001. She agreed no races were held in the summer of 2000, but she presented numerous receipts for work

---

1. We note that in several of the documents in the record, both the Board of Adjustment and the zoning administrator defined "discontinue" as to "stop or cease the *regular* use of the property." However, the clear terms of the zoning ordinance do not include the modifier "regular" in its definition of "discontinue."

done on the speedway during 2000. Lytle sent a letter to petition-ers on 26 February 2001, stating that race tracks, including go-cart race tracks, were not a permitted use in a residential agricultural dis-trict. Lytle concluded in the letter that "the property discontinued its *regular* use as a *public* go-kart speedway for a period of greater than 360 days" and could no longer be used as a "public speedway." (emphasis added).

Petitioners appealed Lytle's decision to the Rowan County Zoning Board of Adjustment (Board of Adjustment). Following a hearing, the Board of Adjustment upheld Lytle's decision. Petitioners filed a petition for a writ of certiorari with the superior court dated 21 May 2001. The superior court entered an amended order dated 5 November 2001 finding that the Board of Adjustment's decision lacked sufficient findings of fact for the court to review. The superior court remanded the matter to the Board of Adjustment and allowed petitioners to amend their pleadings. The Board of Adjustment made findings of fact that there was conflicting evidence about whether racing had occurred at the speedway since 1999 and entered a new order upholding Lytle's decision on 19 November 2001. The Board of Adjustment based its decision on the fact that no admission fees had been collected for more than 360 days. Petitioners filed an amended petition for writ of certiorari dated 14 February 2002 and respondents filed an amended answer on 20 February 2002. The supe-rior court entered an order dated 2 May 2002 affirming the Board of Adjustment's decision.

Petitioners first argue that the superior court did not employ the appropriate standard of review of the Board of Adjustment's decision. Specifically, petitioners argue the Board of Adjustment considered only collection of admission fees by petitioners to determine whether petitioners had discontinued their use of the speedway.

Our Supreme Court has stated that

the task of a court reviewing a decision on an application for a conditional use permit made by a town board sitting as a quasi-judicial body includes:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

*Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 626, 265 S.E.2d 379, 383 (1980).

Where the appealing party contends that the decision was unsupported by the evidence or was arbitrary and capricious, the trial court applies the " 'whole record' " test. *In re Appeal of Willis*, 129 N.C. App. 499, 501, 500 S.E.2d 723, 725 (1998) (citations omitted). "The 'whole record' test requires the reviewing court to examine all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by 'substantial evidence.' " *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994) (citation omitted). "The 'whole record' test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*." *Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977) (citation omitted).

However, if the appealing party contends the decision was based on an error of law, the trial court employs a *de novo* review. *Willis*, 129 N.C. App. at 501, 500 S.E.2d at 725 (citations omitted). "Under a *de novo* review, the superior court 'consider[s] the matter anew[] and freely substitut[es] its own judgment for the agency's judgment.' " *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002) (quoting *Sutton v. N.C. Dep't of Labor*, 132 N.C. App. 387, 389, 511 S.E.2d 340, 341 (1999)). "Moreover, '[t]he trial court, when sitting as an appellate court to review a [decision of a quasi-judicial body], must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review.' " *Sun Suites Holdings, LLC v. Board of Aldermen of Town of Garner*, 139 N.C. App. 269, 272, 533 S.E.2d 525, 528, *disc. review denied*, 353 N.C. 280, 546 S.E.2d 397 (2000) (quoting *Sutton*, 132 N.C. App. at 389, 511 S.E.2d at 342).

When our Court reviews the decision of a trial court reviewing an agency decision,

> "the appellate court examines the trial court's order for error of law. The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly."

*Mann Media, Inc.*, 356 N.C. at 14, 565 S.E.2d at 18 (citations omitted).

We now consider whether the superior court employed the appropriate standard of review and, if so, whether it applied that standard properly. Questions involving the interpretation of an ordinance are questions of law. *Capricorn Equity Corp. v. Town of Chapel Hill*, 334 N.C. 132, 136-37, 431 S.E.2d 183, 186-87 (1993). Thus, the superior court should have applied *de novo* review to the Board of Adjustment's alleged misinterpretation of the ordinance. *Id.* As discussed above, the superior court " 'must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review.' " *Sun Suites Holdings, LLC*, 139 N.C. App. at 272, 533 S.E.2d at 528 (quoting *Sutton*, 132 N.C. App. at 389, 511 S.E.2d at 342). The superior court, in affirming the Board of Adjustment's decision, made the following pertinent findings:

> 2) That the Rowan County Zoning Board of Adjustment made findings of fact pursuant to said Order, finding that the Petitioner's facility in question, to wit; Millbridge Speedway, was discontinued as public speedway for a period of more than 360 days, further finding that the term "discontinue" is defined in Article II, of the Rowan County Zoning Ordinance as "to stop or cease the regular use of the property", citing supporting testimony by various individuals who lived in the vicinity of Millbridge Speedway; . . .
>
> . . .
>
> 4) That the Rowan County Zoning Board of Adjustment further concurred with the ruling of Zoning Administrator that Millbridge Speedway had discontinued its regular use as a public speedway for greater than 360 days and that its use as a speedway is not permitted unless the property is rezoned to a classification which allows this use.

WELTER v. ROWAN CTY. BD. OF COMM'RS

[160 N.C. App. 358 (2003)]

5) That this Court finds that the findings of fact and decisions of the Rowan County Zoning Board of Adjustment as above set forth were fully supported by competent, material and substantial evidence in the record filed with this Court pursuant to the Writ of Certiorari.

Review of the superior court's order shows the superior court did not employ the required *de novo* review of the Board of Adjustment's interpretation of the zoning ordinance, specifically in determining the meaning of the terms "discontinued use" and "use" in the ordinance as they relate to the present proceedings.

Based on a recent line of cases, instead of remanding such a case to the superior court for exercise of the proper *de novo* review of the zoning ordinance's interpretation, "an appellate court's obligation to review a superior court order for errors of law . . . can be accomplished by addressing the *dispositive issue(s)* before the agency and the superior court without examining the scope of review utilized by the superior court." *Eastern Outdoor, Inc. v. Board of Adjust. of Johnston Cty.*, 150 N.C. App. 516, 519, 564 S.E.2d 78, 80-81 (2002), *appeal dismissed*, 356 N.C. 670, 577 S.E.2d 116 (2003) (emphasis added) (quoting *Capital Outdoor, Inc. v. Guilford Cty. Bd. of Adjust.*, 146 N.C. App. 388, 392, 552 S.E.2d 265, 268 (2001) (Greene, J. dissenting)). Since our Supreme Court reversed this Court's decision in *Capital Outdoor, Inc.*, adopting Judge Greene's dissent in a *per curiam* decision, 355 N.C. 269, 559 S.E.2d 547 (2002), our Court has addressed the *dispositive issues* before our Court in several recent opinions, despite the failure of the superior court to conduct the appropriate review or specify the review it was conducting of the administrative board's decision. *See, e.g., N.C. Dep't of Health & Human Servs. v. Maxwell*, 156 N.C. App. 260, 262-63, 576 S.E.2d 688, 690-91 (2003); *Shackleford-Moten v. Lenoir Cty. DSS*, 155 N.C. App. 568, 572-73, 573 S.E.2d 767, 770 (2002), *disc. review denied*, 357 N.C. 252, 582 S.E.2d 609 (2003); *Sack v. N.C. State Univ.*, 155 N.C. App. 484, 492, 574 S.E.2d 120, 127-28 (2002); and *Eastern Outdoor, Inc.*, 150 N.C. App. at 519, 564 S.E.2d at 80-81.

However, in the present case there are two problems with taking such an approach. First, it is not clear that all of the sections of the zoning ordinance necessary for a proper interpretation of the relevant portions of the ordinance are included in the record. Second, interpretation by our Court of the portions of the zoning ordinance at issue in this case would not necessarily be dispositive of the case

given the need for further findings of fact. In each of the cases cited above, our Court only addressed the underlying issue when all of the necessary facts and evidence were before us, and when by doing so, we would dispose of the case. *See, e.g., Sack*, 155 N.C. App. at 493, 574 S.E.2d at 127-28 (" '[w]e do not believe a remand is necessary, however, because . . . the entire record of the hearing is before us.' ") (citation omitted).

First, as noted above, our Court has only engaged in the review announced in *Capital Outdoor, Inc.* when all of the necessary facts and evidence were before us. We note that in the present case, while the parties have included some sections of the zoning ordinance in the record, other sections which may impact the proper interpretation of the zoning ordinance are not included. The sections of the zoning ordinance included in the record do not provide guidance on the zoning ordinance's specific application to race tracks. While it is not necessary that an entire zoning ordinance be in the record if all relevant portions are present, the piecemeal fashion in which the zoning ordinance is included in the record before us, with no method for determining whether the omitted portions are relevant for our interpretation, dissuades this Court from interpreting the ordinance at this stage.

Second, even if we interpreted the meaning of the terms "use" and "discontinued use" in the context of the speedway in the present case, without having the benefit of possibly relevant sections of the zoning ordinance in the record, such interpretation would not necessarily be dispositive of the case. In Lytle's letter to petitioners, he concluded that the "use" in this particular case was for a *"public* speedway." (emphasis added). However, Lytle's letter begins with a different definition of "use" in the present case, stating that go-cart racing in general is "not a permitted use in the RA district and therefore the speedway is a non-conforming situation."[2] This statement focuses on racing of go-carts on the track, while Lytle's conclusion in the letter that the speedway had ceased to be used as a "public go-kart speedway" focused on the fact that the track had not been open to the public and there had been no selling of tickets. The Board of Adjustment upheld Lytle's decision, focusing on the fact that the speedway "was not operated as a commercial operation, i.e., no money was collected for admission fees, etc.," and that the speedway was not open to the public for 360 days, "constitut[ing] activities at the track as a private,

---

2. We note that the record does not include the section of the zoning ordinance that may provide the definition for the term "non-conforming situation."

not a commercial operation." This basis for the Board of Adjustment's decision could result in the speedway's continued use for racing go-carts, as long as there was no payment by the public for tickets to enter and watch such races.

Another possible interpretation of the word "use" as it applies to the speedway, which was indicated in Lytle's letter to petitioners, focuses on the racing of go-carts on the track, regardless of whether or not tickets are sold. If this latter interpretation were adopted, the case would not be disposed of because there is still an issue of fact as to whether any go-cart racing occurred during the 360 days preceding Lytle's original decision. Although the superior court previously remanded the case to the Board of Adjustment for findings of fact to support its first decision, the findings submitted by the Board of Adjustment in response to this request do not include sufficient findings of fact on this issue. In response to the superior court's instructions, the Board of Adjustment stated, in pertinent part, as follows:

> Substantial evidence presented in support of the zoning administrator's ruling includes the following:
>
> (a) Testimony by Jackie and Danny Shaw who reside approximately 1/8 of a mile from the track that the last race held at the track was prior to May 1999.
>
> (b) Testimony by Mr. O.L. Beaver . . . that no racing had occurred since spring of 1999.
>
> (c) Testimony by Mr. Allen Welter that no racing occurred in the Summer of 1999 and a year was spent upgrading the track.
>
> (d) Testimony by Mr. Glen Chapman that racing occurred in March 2000 and occurred while the trac[k] was closed.
>
> (e) Testimony by Marion Lytle that the track had discontinued use as a public go-cart track because it was not operated as a commercial operation, i.e., no money was collected for admission fees, etc.

None of these statements are proper findings of fact in that they merely recite that there was testimony as to each of the above contentions, but do not find the facts. *Williamson v. Williamson*, 140 N.C. App. 362, 364, 536 S.E.2d 337, 339 (2000) (noting that "mere recitations of the evidence" are not the ultimate findings required, and "do not reflect the processes of logical reasoning" required) (citation omitted); *Dunlap v. Clarke Checks, Inc.*, 92 N.C. App. 581, 584,

375 S.E.2d 171, 174 (1989) ("Findings of fact that merely restate a party's contentions or testimony without finding the facts in dispute are not adequate. It is the duty of the fact finder to resolve conflicting evidence.") (citing *Wall v. Timberlake*, 272 N.C. 731, 158 S.E.2d 780 (1968)). Secondly, even if each statement was considered an appropriate finding of fact, there is a direct contradiction between a finding (1) that there were no races run at the track and (2) that there was racing conducted at the track. That contradiction must be resolved by the Board of Adjustment.

In the present case, where the superior court failed to exercise the appropriate standard of review of an administrative board's decision and where we cannot dispose of the case by resolving the issue ourselves, we appropriately remand the case to the trial court. We therefore remand this case to the superior court for proper review of the Board of Adjustment's interpretation of the zoning ordinance. We thus need not address petitioners' remaining assignments of error.

Reversed and remanded.

Judges McCULLOUGH and LEVINSON concur.