ELLIS Y. COLEMAN, d/b/a EYC COMPANIES and H. TATE McKEE TRUST, Plaintiffs/Petitioners v. TOWN OF HILLSBOROUGH, Defendant/Respondent

ELLIS Y. COLEMAN, d/b/a EYC COMPANIES and H. TATE McKEE TRUST, Plaintiffs/Petitioners v. TOWN OF HILLSBOROUGH, and TOWN OF HILLSBOROUGH BOARD OF COMMISSIONERS, Defendants/Respondents

No. COA04-1274

(Filed 4 October 2005)

**1. Zoning— special use permit—protest petitions—not timely—supermajority vote not needed**

The trial court did not err by granting summary judgment for petitioners, who were denied a special use permit for a retirement community. The Planning Board mistakenly thought a supermajority was necessary for the permit because the Planning Director applied a mistaken deadline for protest petitions (which must be filed two working days before the zoning hearing), and did not adequately determine and document that the required threshold of protest petitions had been met.

**2. Zoning— special use permit—retirement community—mistakenly denied**

The trial court did not err by ordering a Town Board to issue a special use permit where the permit had been denied based on a mistaken deadline for protest petitions which resulted in the mistaken belief that a supermajority was required.

**3. Zoning— special use permit—invalid denial—issuance ordered**

It was appropriate for the trial court to order the issuance of a special use permit without remanding the issue to the Town Board for further findings where the sole basis set forth for the Board's denial was determined to be invalid.

**4. Appeal and Error— preservation of issues—lack of cited authority**

The lack of cited authority meant abandonment of an argument that the court abused its discretion in denying the Town's motion for relief under Rules 59 and 60 of the Rules of Civil Procedure. Moreover, the evidence upon which the motion was based was readily available through due diligence.

**COLEMAN v. TOWN OF HILLSBOROUGH**

[173 N.C. App. 560 (2005)]

Appeal by defendant Town of Hillsborough from order granting summary judgment and appeal by defendant Town of Hillsborough Board of Commissioners from order granting special use permit entered 25 June 2004 by Judge Wade Barber in Orange County Superior Court. Heard in the Court of Appeals 19 April 2005.

*Poyner & Spruill, LLP, by Robin L. Tatum and Kacey Sewell Ragsdale, for plaintiffs/petitioners-appellees.*

*The Brough Law Firm, by Robert E. Hornik, Jr., for Town of Hillsborough, defendant/respondent-appellant.*

JACKSON, Judge.

Appellant, Town of Hillsborough appeals from an order granting summary judgment to appellees, Ellis Coleman, d/b/a EYC Companies and H. Tate McKee Trust (collectively "EYC") entered 25 June 2004 in Orange County Superior Court.

Appellants, Town of Hillsborough and Town of Hillsborough Board of Commissioners, ("the Town Board"), both appeal from an Order Granting Special Use Permit to appellees, Ellis Coleman, d/b/a EYC Companies and H. Tate McKee Trust (collectively "EYC") entered 25 June 2004 in Orange County Superior Court. Collectively, appellants Town of Hillsborough and Town of Hillsborough Board of Commissioners are denominated as "The Town".

EYC submitted a re-zoning application, a special use permit ("SUP") application and a major subdivision preliminary plan application to the Town. EYC sought to have an approximately forty (40) acre parcel of land outside the Hillsborough town limits, but within its extraterritorial zoning jurisdiction, re-zoned from R-20 to mixed residential special use ("MRSU") in order to develop it into a retirement community. EYC's applications were placed on the agenda for the 22 October 2002 joint Town Board and Town Planning Board public hearing. The required notice of the public hearing was published and written notice was mailed to the owners—as determined by the County tax records—of property within 500 feet of the property in question on 8 October 2002.

The written notice sent to adjacent property owners was a standard notice used by the Town Planning Director for all re-zoning applications. The notice provided no deadline for filing a valid statutory protest petition nor any other information regarding protest petitions other than to contact the Planning Department for information. EYC's

applications proposed that the development would consist of seventy (70) detached, single-family homes; thirty-five (35) town homes; 144 apartments, and seventy-two (72) assisted care units. The notice contained a summary of the proposed development consistent with these numbers. Various protest petitions were received on or before Friday, 18 October 2002.

The Town Planning Director, Margaret Hauth ("Hauth"), reviewed the petitions and determined that they were signed by owners of more than twenty percent (20%) of the property within 100 feet of the subject property. Hauth did not, however, document how she calculated the percentage of the surrounding land represented by the petitions, how she determined the validity of the protest petitions, nor did she record the date or time of their filing.[1]

At the 22 October meeting, EYC presented its proposal and several of the landowners in the area of the proposed development, including some who had signed petitions, spoke in opposition to the proposed changes. Areas of concern raised at the meeting included the size of the buffer, density of the development, traffic and the height of the proposed buildings. The meeting closed without a decision from the board. Discussions between EYC, the Town and the concerned neighbors took place in the months following the meeting. EYC redesigned the project in an effort to address the concerns regarding the project expressed by the Town and the neighbors.

When the redesign was completed, EYC filed a revised application for re-zoning reflecting the changes made to the first proposal. The second proposal had fewer units, reduced density, and an altered buffer. All of these changes were intended to address the concerns expressed by both the Town and the neighbors regarding the first proposal. These changes included reducing the number of units to seventy (70) detached homes and duplexes combined, 102 apartments, and forty (40) assisted living units; reducing the density by thirty-five percent (35%) (which would result in reduced traffic); doubling the buffer; and eliminating all three story buildings. Because of the changes, the new proposal was scheduled to be addressed at a public hearing on 15 April 2003.

1. The submission of valid protest petitions signed by more than twenty percent (20%) of the adjacent landowners imposes a requirement, pursuant to North Carolina law, that the re-zoning be approved by a super-majority vote of the Town Board before the request can be granted. N.C. Gen. Stat. 160A-385(a) (2003).

Hauth published a new notice of hearing and sent letters to the required landowners. The notice provided information about the changes contained in the new proposal. The notice also stated: "There is an active protest petition on this project. If you previously signed and are still opposed, no further action is required. If you want to add or remove your name, please contact the Planning Department." No new protest petitions were filed, none of the previous petitions were withdrawn, and no one who previously had filed a protest petition spoke against the project at the second hearing. After the meeting, the Town Planning Board voted to recommend approval of the second proposal and it was then submitted to the Town Board.

The Town Board did not vote on the proposal until 13 October 2003. The Town Board then voted 3-2 in favor of approving the revised proposal. The SUP also received a 3-2 vote in favor of approval. Due to the protest petitions that had been filed regarding the original proposal, the Board members believed that a super-majority vote was required to approve the re-zoning request and therefore determined that the request had not been approved. After being advised by the county attorney that the property first must have been re-zoned before the SUP could be allowed, the board re-voted on the SUP and voted 4-1 against it. This re-vote was based solely on the belief that the re-zoning request had not been granted.

EYC appealed the denial of the re-zoning request and SUP application to the Superior Court of Orange County on the basis that the protest petitions requiring the re-zoning to be approved by a super-majority vote were invalid. Both EYC and the Town filed motions for summary judgment. EYC's motion was granted and the Town's denied. The court then reversed the denial of the SUP and directed the Town to issue the SUP. The Town timely filed notice of appeal.

The Town argues on appeal that the trial court erred in granting EYC's motion for summary judgment on the grounds that valid protest petitions had been filed and, therefore, a simple majority vote of the Town Board was insufficient for approval of the re-zoning request; erred in ordering the Town Board to issue the SUP rather than remanding the SUP issue to the Town Board for consideration in light of the trial court's holding on the re-zoning petition; and the trial court abused its discretion by denying its Rule 59 and 60 motions.

[1] The Town first argues that the trial court erred in granting EYC's motion for summary judgment. It is well established that "[t]he standard of review on appeal from the granting of a motion for summary

judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law." *Draughon v. Harnett County Bd. of Educ.*, 158 N.C. App. 705, 707, 582 S.E.2d 343, 345 (2003) *aff'd*, 358 N.C. 137, 591 S.E.2d 520, *reh'g denied*, 358 N.C. 381, 597 S.E.2d 129 (2004). The burden of showing that there exists no genuine issue of material fact falls on the moving party. *Id.* at 708, 582 S.E.2d at 345.

In the case *sub judice*, the determinative issue to be resolved was whether the documents upon which Hauth based her determination that the owners of over twenty percent (20%) of the adjacent land had signed protest petitions were valid. In support of its motion for summary judgment EYC submitted the depositions of Hauth, Ellis Y. Coleman, and Mary Beerman. The Town filed a cross-motion for summary judgment supported by the pleadings, the record of a companion certiorari case, the affidavit of Hauth, and the same supporting documents submitted by EYC in support of its motion.

In re-zoning proceedings, the municipality has "an affirmative duty to determine the sufficiency, timeliness, and percentage of the protests" to impose the super-majority vote provided for by North Carolina General Statutes section 160A-385(a) (2003). *Unruh v. Asheville*, 97 N.C. App. 287, 290, 388 S.E.2d 235, 237 (1990). Without an adequate determination of those factors it cannot be presumed that the municipality complied with the requirements for a valid action on the subject re-zoning proceeding. *Id.*; *see Morris Communications v. City of Asheville*, 356 N.C. 103, 111-12, 565 S.E.2d 70, 75-76 (2002) (holding that "any and all portions" of a city ordinance were "invalid" where the record demonstrated that the City "conducted both an incomplete and inaccurate review of the submitted petitions protesting the ordinance at issue[.]"). Zoning regulation is in derogation of common law property rights and therefore must be strictly construed to limit such derogation to that intended by the regulation. *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment*, 354 N.C. 298, 304, 554 S.E.2d 634, 638 (2001) (citing *Yancey v. Heafner*, 268 N.C. 263, 266, 150 S.E.2d 440, 443 (1966)).

North Carolina General Statutes section 160A-386 provides that no protest petition is valid "unless it shall have been received by the city clerk in sufficient time to allow the city at least two normal work days, excluding Saturdays, Sundays and legal holidays, *before* the date established for a public hearing on the proposed change or

amendment to determine the sufficiency and accuracy of the petition." N.C. Gen. Stat. § 160A-386 (2003) (emphasis added). Here, the initial hearing was scheduled for Tuesday, 22 October 2001 and therefore protest petitions must have been received two working days before, not including, that date in order to be valid, *i.e.*, the petitions should have been received by the close of business on Thursday, 17 October. Hauth's testimony is unequivocal, however, that she believed the deadline to be 5:00 p.m. on Friday, the 18th, and that she considered valid any petition filed prior to that time. Such an interpretation would allow only one working day (Monday, October 21st) prior to the date of the hearing, clearly in contravention of the statutory requirements. Hauth's testimony also is clear that she failed to log in or record the petitions as they were received and therefore was unable to determine definitively which, if any, petitions were received prior to the statutorily required deadline of close of business on Thursday, 17 October 2002.

The Town argues that the purpose of the two working day requirement is to ensure that the governing body has adequate time to make the required determinations of sufficiency prior to the hearing, and since Hauth claims that she was able to do so, the potential untimeliness of the petitions should not be used to invalidate them. As discussed *infra*, Hauth, in fact, did not adequately determine the sufficiency of the petitions prior to the hearing. Further, to allow a governing body the discretion to waive the two working day requirement could create a situation in which there is unequal treatment under the law. This cannot be allowed and therefore the Town lacked the authority to consider any petitions that were not timely filed within the mandatory parameters of North Carolina General Statutes section 160A-386.

The evidence before the trial court on the motion for summary judgment also showed that, at the time of the first hearing, Hauth lacked any documentation of the calculations she made to determine whether the protest petitions met the twenty percent (20%) threshold and that she failed to investigate the validity of petitions signed by only one owner of co-owned properties. Accordingly, the Town did not show that it had satisfied its affirmative duty to determine the sufficiency of the protest petitions that it received. Without a showing that the Town made an adequate determination that the protest petitions were valid, the legitimacy of the Town's actions regarding the rezoning issue cannot be presumed. *Unruh*, 97 N.C. App. at 290, 388 S.E.2d at 237.

Hauth's affidavit submitted by the Town in support of its motion for summary judgment indicates that the petitions that were filed were valid and represented more than twenty percent (20%) of the adjacent property. This affidavit is irrelevant, however, as those determinations were made subsequent to the hearing in anticipation of the summary judgment proceedings and had not been made in advance of the zoning hearing as required. The requirement that petitions must be filed in such time as to allow the municipality at least two normal work days prior to the date of the hearing to allow the municipality to determine the sufficiency and accuracy of the petitions clearly indicates that such determinations must be made prior to such a hearing. Therefore, this assignment of error is overruled.

[2] The Town next argues that the trial court erred in ordering the Town Board to issue the special use permit. In reviewing a town board's decision, the superior court must decide whether the reasons for the denial were supported by competent, material, and substantial evidence. *Guilford Fin. Servs. v. City of Brevard*, 356 N.C. 655, 576 S.E.2d 325 (2003) (adopting dissent of Tyson, Judge, 150 N.C. App. 1, 563 S.E.2d 27 (2002)). In the case *sub judice*, the parties both agree that the sole reason given by the Town Board for the denial of the SUP was that the re-zoning application had been denied due to the lack of a super-majority vote, and that, consequently, the proposed use was not a permitted use under the R-20 zoning classification that remained in place.

As we have held already, the trial court was correct in its determination that the protest petitions were invalid and therefore, a super-majority vote of the Town Board was not required for approval of the zoning change. Accordingly, because a simple majority of the Town Board voted in favor of the zoning change, the property in question had been re-zoned successfully from R-20 to MRSU, a classification in which the proposed use was allowed. As the property had been re-zoned from R-20 to MRSU, the use proposed by the SUP was permitted in the property's zoning classification and the original vote in favor of approval was valid. Consequently, the Town Board's denial of the SUP was not supported by competent, material, and substantial evidence.

[3] The Town argues alternatively that the SUP properly should be sent back for a new hearing because the Town Board failed to consider the factors required for approval of a SUP under the Town's zoning ordinance. The Town fails to consider the fact, however, that the

Board voted initially to approve the SUP by a simple majority and only voted to deny it in the mistaken belief that the re-zoning had not been approved and, therefore, the SUP could not be approved.

The Town of Hillsborough Zoning Ordinance section 4.39, contained in the Town Code, governs issuance of SUP's. Section 4.39 provides in relevant part:

> 4.39.1 Subject to 4.39.2, the Board of Commissioners *shall* issue the requested permit unless it concludes, based upon the information submitted at the hearing that:
>
>> a) The requested permit is not within its jurisdiction according to the Table of Permissible Uses, or
>>
>> b) The application is incomplete, or
>>
>> c) If complete as proposed in the application the development will not comply with one or more requirements of this chapter (not including those the applicant is not required to comply with under the circumstances specified in Non-Conformities)
>
> 4.39.2 Even if the permit-issuing boards finds that the application complies with all other provisions of this chapter, it may still deny the permit if it concludes, based upon the information submitted at the hearing, that if completed as proposed, the development, more probably that not:
>
>> a) Will materially endanger the public health or safety, or
>>
>> b) Will substantially injure the value of adjoining or abutting property, or
>>
>> c) Will not be in harmony with the area in which it is to be located, or
>>
>> d) Will not be in general conformity with the land-use plan, thoroughfare plan, or other plan officially adopted by the council.

(Emphasis added.)

This ordinance clearly provides that a SUP *shall* be issued unless the Town Board finds at least one of the enumerated reasons provided in the ordinance for denying the SUP. Here, the sole basis for the Town Board's denial of the SUP was that the proposed use was

not permitted in an R-20 Zoning District and, consequently, did not meet the requirements of Zoning Ordinance Section 4.3(c) and (d). Sections 4.3(c) and (d) require, respectively, that the requested use not "substantially injure the value of contiguous property . . ." and be "in compliance with the general plans for the physical development of the Town . . . ." As we already have determined, EYC's re-zoning request was granted and, accordingly, the use proposed in the SUP was authorized in the new zoning classification—MRSU. Consequently, the basis for the Town Board's denial of the SUP was not valid.

As the Hillsborough Town Code requires issuance of a requested SUP in the absence of findings by the Town Board of the existence of any of the specifically enumerated bases for denial of such permit, and the sole basis set forth for the Town Board's denial of the SUP has been determined to be invalid, it was appropriate for the trial court to order the issuance of the SUP without remanding the issue to the Town Board for further findings. Therefore this assignment of error is overruled.

**[4]** The Town's final argument is that the trial court abused its discretion in denying the Town's motion filed pursuant to Rules 59 and 60 of the North Carolina Rules of Civil Procedure. The Town fails to provide any authority in support of this argument, however. The Town simply makes the bare assertion that "it was an abuse of the lower court's discretion to disregard Mr. Jones' affidavit—which contained new information—and to deny the motion." Rule 28 of the North Carolina Rules of Appellate Procedure requires that an appellant's brief contain an argument which includes citations of the authorities upon which the appellant relied. N.C.R. App. P. Rule 28(b)(6) (2005). Assignments of error which are not supported by legal authority are deemed abandoned. *Pharmaresearch Corp. v. Mash*, 163 N.C. App. 419, 428, 594 S.E.2d 148, 154, *disc. review denied*, 358 N.C. 733, 601 S.E.2d 858 (2004). Consequently, this assignment of error is deemed abandoned.

Further, this assignment of error could not have succeeded even if considered on the merits. Rules 59 and 60 provide for the possibility of relief under limited circumstances, including when there is newly discovered evidence that could not have been discovered and produced at trial through the reasonable diligence of the party seeking relief under one of these rules. N.C. Gen. Stat. § 1A-1, Rules 59 (a)(4) and 60(b)(2). In the instant case the evidence upon which the requested relief is based was readily available to the Town at trial

through the exercise of reasonable diligence. Consequently, the Town's motions pursuant to Rules 59 and 60 were properly denied.

Affirmed.

Judges TIMMONS-GOODSON and BRYANT concur.