MICHAEL R. LAND, PETITIONER v. THE VILLAGE OF WESLEY CHAPEL AND THE BOARD OF ADJUSTMENT OF THE VILLAGE OF WESLEY CHAPEL, RESPONDENTS

No. COA09-1465

(Filed 3 August 2010)

## 1. Zoning— judicial review—de novo standard

The superior court correctly identified *de novo* review as the standard of review for a municipal zoning decision.

## 2. Zoning— shooting range—grandfathered—not clearly covered by ordinance

The trial court correctly concluded that petitioner's property was grandfathered under a land use ordinance and that petitioner was not required to obtain a special use permit for his personal shooting range, absent a clear land use ordinance regulating shooting ranges.

## 3. Zoning— shooting range—grandfathered—improvements— not a material alteration

The trial court correctly concluded that there had been no material alteration of property that was grandfathered under a zoning ordinance where a shooting range on the property was rotated, a new and larger backstop was built, and other changes were made in response to nearby residential development. The Village did not include the value of the land in its calculation of the percentage threshold for determining "material alteration" under the ordinance.

Judge BEASLEY concurring.

Appeal by respondents from order entered 30 July 2009 by Judge W. Erwin Spainhour in Union County Superior Court. Heard in the Court of Appeals 12 April 2010.

*The Helms Law Firm, PLLC, by W. Tate Helms, for petitioner appellee.*

*Hamilton Moon Stephens Steele & Martin, PLLC, by Keith J. Merritt and Rebecca K. Cheney, for the Village of Wesley Chapel respondent appellants.*

*Shumaker, Loop & Kendrick, LLP, by William H. Sturges, for The Board of Adjustment of the Village of Wesley Chapel respondent appellants.*

HUNTER, JR., Robert N., Judge.

The Village of Wesley Chapel and its Board of Adjustment (collectively the "Village"), appeal an order reversing the Village's decision to prohibit Dr. Michael R. Land ("Dr. Land") from using a shooting range on his private property. The Village contends that Dr. Land's use of the shooting range has been and continues to be unlawful because the shooting range was unauthorized by zoning laws existent at the time the shooting range was established, and because "material alterations" have been made to the range thereafter in violation of the Village's current Land Use Ordinance.

The trial court concluded that the Union County Land Use Ordinance of 1988 (the "1988 Ordinance"), the Land Use Ordinance in place at the time Dr. Land bought the land in issue, did not bar shooting ranges; and assuming *arguendo* that there was a violation of the 1988 Ordinance, the Village was barred by *laches* from enforcing the 1988 Ordinance. The trial court also concluded that Dr. Land did not make any material alterations to the shooting range.

The Village appeals the trial court's order and argues that the trial court erred in concluding that: (1) Dr. Land's use of the property was in compliance with the 1988 Ordinance; (2) Dr. Land did not materially alter the shooting range in 2007 and 2008; and (3) the doctrine of *laches* bars the Village from enforcing its current Land Use Ordinance against Dr. Land. Dr. Land also cross-assigns as error the trial court's failure to conclude that the Sport Shooting Range Protection Act of 1997, N.C. Gen. Stat. § 14-409.45, *et seq.*, protects his use of the range.

We agree with the trial court that Dr. Land's use of the property did not violate the 1988 Ordinance and that Dr. Land did not materially alter the shooting range under the Village's Land Use Ordinance. Since our decision on these issues disposes of this ap-

peal, we accordingly decline to address the application of the doctrine of *laches* and Dr. Land's cross-assignment of error regarding the Sport Shooting Range Protection Act of 1997.

## I. FACTUAL BACKGROUND

In July 1991, Dr. Land purchased 5.68 acres of unincorporated land ("the property") in Union County. His acquisition cost was over $80,000. Dr. Land is the father of four sons, and the family's hobbies include shooting, hunting, fishing, and riding four-wheeled ATVs. Shortly after the purchase, Dr. Land established a shooting range on the back two-thirds of the property with 144 railroad ties and fill dirt at a cost of $2,000. Between 1996 and 2003, Dr. Land and his family lived on the property.

Dr. Land collects guns, including some semi-automatic and fully automatic guns, which he shoots on the range. The property is fenced and posted with no trespassing signs. Dr. Land personally supervises firing on the range and limits its use to Dr. Land's family and guests. While about ninety percent of the shooting on the range is exercised with a .22 caliber rifle, Dr. Land does sometimes shoot the semi-automatic and fully automatic weapons at the range. These weapons can fire up to 900 rounds per minute.

In 1999, in response to a new residential development being built adjacent to the property, Dr. Land spent $1,000 to rotate the range and the line of fire approximately 110 degrees. Between 2007 and 2008, Dr. Land spent $15,000 in improvements to heighten the backstop by five feet, deepen the backstop by 20 feet, and widen the backstop by 40 feet. These improvements required 1,200 tons of dirt.[1]

Wesley Chapel incorporated on 15 July 1998, and Dr. Land voluntarily annexed the property into the Village on 23 June 1999. The Village enacted its first Land Use Ordinance on 22 August 2000. Dr. Land continued to use the land for a shooting range after the Village's Land Use Ordinance was enacted.

## II. PROCEDURAL HISTORY

On 9 January 2007, Mr. Krieg, then Wesley Chapel's Planning and Zoning Administrator, wrote a letter to Dr. Land informing him that the Village's Land Use Ordinance did not permit gun ranges in residential districts. On 11 January 2007, Dr. Land replied by letter claim-

---

1. At the Board of Adjustment hearing, the parties stipulated that Dr. Land's safe use of property as a firing range was not an issue.

ing that the Sports Shooting Range Protection Act of 1997 shielded his use of the property from municipal regulation. The Village zoning authorities took no further action after Dr. Land's first letter.

On 10 September 2008, Wesley Chapel's new Zoning Administrator, Mr. Langen, issued a cease-and-desist order prohibiting Dr. Land from using the property as a target shooting range. Mr. Langen claimed that the shooting range was not an allowable use "as of right" in any zoning district without a conditional use permit.

In his letter, Mr. Langen stated that the property was subject to the 1988 Ordinance when the property was purchased and the range was established. Under Mr. Langen's interpretation, the 1988 Ordinance was a "unified" land use ordinance, and Mr. Langen contended that Dr. Land's use of the land as a shooting range most closely fit with the category "privately-owned outdoor recreational facility." In order to operate this type of "facility" under the 1988 Ordinance, Dr. Land would have been required to obtain a special use permit. Since no special use permit was on record, Mr. Langen claimed that the target range was not permitted under the 1988 Ordinance, and therefore the range did not qualify as a prior nonconforming use of the property which could be grandfathered in under the provisions of the subsequent Village Land Use Ordinance.[2]

The lack of a special use permit aside, Mr. Langen's letter also asserted that even if the property had been considered a "nonconforming use" and was grandfathered in under the 1988 Ordinance, the range and property had undergone a "material alteration" in 2007 and 2008. The letter quotes Section 7.3.2 of the Village Land Use Ordinance, which addresses nonconforming uses of land and states:

> If said land use is . . . materially altered, the land use shall be considered discontinued and shall not be reestablished unless the use is in conformance with the regulations of the district in which

---

2. Village Ordinance Section 7.1 reads as follows:

Nonconforming uses, which  are uses of structure or of land existing at the Effective Date of initial adoption of this Ordinance, which do not comply with the provisions of this Ordinance, are declared by this Ordinance to be incompatible with permitted uses in the various districts. The intent of this Article is to permit the continued use of a structure, or portion thereof, or of the use of land legally existing prior to the Effective Date of this Ordinance, until such uses are removed, but not to encourage their survival. Such nonconforming uses shall not be expanded, extended or changed in any manner except as specifically provided for in this Article. Creation of additional nonconforming uses are not to be encouraged nor shall be permitted.

it is located. Material alteration for the purpose of this subsection is defined as change to size, contour, etc. to an extent of more than fifty percent (50%) of the replacement cost at the time of said alteration.

Based on this language, Mr. Langen concluded:

Therefore, as you have made improvements to the shooting range, including removal of wooden targets and installation of earthern berms, the improvements to the use would be in violation of any non-conforming use status. Specifically, the wooden targets were of very poor quality with negligible replacement value and installation of earthen berms is considered to be a material alteration to an extent of more than fifty percent of the replacement cost of the wooden targets. Therefore, any potential nonconforming land use status of the shooting range would have to be considered to be discontinued and the use in violation of the Zoning Ordinance.

Dr. Land appealed the Administrator's decision to the Board of Adjustment on 25 September 2008, and the Board held hearings on 30 October 2008 and 12 November 2008. On 12 December 2008, the Board entered an order upholding Mr. Langen's decision.

Dr. Land filed a petition for writ of certiorari of the Board's decision to the superior court on 11 January 2009, and on 8 June 2009, the superior court reversed the decision of the Board of Adjustment. In its order, the superior court held that: (1) no special use permit was required under the 1988 Ordinance; (2) *laches* barred the Village's enforcement actions; and (3) there was no material alteration of the use of the land by Dr. Land. The Village thereafter filed a timely notice of appeal.

## III. JURISDICTION AND STANDARD OF REVIEW

Appellate review in this case is proper under N.C. Gen. Stat. § 7A-27(b) (2009), because the order of the superior court is a final order disposing of all issues in the trial court. "When reviewing an appeal from a petition for writ of certiorari in superior court, this Court's scope of review is two-fold: (1) examine whether the superior court applied the appropriate standard of review; and, if so, (2) determine whether the superior court correctly applied the standard." *Cole v. Faulkner*, 155 N.C. App. 592, 596, 573 S.E.2d 614, 617 (2002).

If a petitioner appeals an administrative decision "on the basis of an error of law, the [superior] court applies *de novo* review; if the

petitioner alleges the decision was arbitrary and capricious, or challenges the sufficiency of the evidence, the trial court applies the whole record test." *Blue Ridge Co., L.L.C. v. Town of Pineville*, 188 N.C. App. 466, 469, 655 S.E.2d 843, 845-46, *disc. review denied*, 362 N.C. 679, 669 S.E.2d 742 (2008). The superior court " 'may properly employ both standards of review in a specific case[,]' [h]owever, 'the standards are to be applied separately to discrete issues,' and the reviewing superior court must identify which standard(s) it applied to which issues[.]" *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 15, 565 S.E.2d 9, 18 (2002) (citations omitted).

## IV. ANALYSIS

### A. Was the proper standard of review applied by the superior court?

[1] In his order, Judge Spainhour cited the following language from *CG&T Corp. v. Bd. of Adjustment of Wilmington*, as the proper scope of review for superior courts in examining zoning decisions of a municipality:

> The superior court should determine the following: (1) whether the Board committed any errors in law; (2) whether the Board followed the procedures specified by law in both statute and ordinance; (3) whether the appropriate due process rights of the petitioner were protected, including the rights to offer evidence, cross-examine witnesses, and inspect documents; (4) whether the Board's decision was supported by competent, material and substantial evidence in the whole record; and (5) whether the Board's decision was arbitrary and capricious.

105 N.C. App. 32, 36, 411 S.E.2d 655, 658 (1992).

In specifying the standard of review for errors of law, Judge Spainhour properly stated and applied the *de novo* standard of review as follows: " 'Under a *de novo* review, the superior court "consider[s] the matter anew[] and freely substitut[es] its own judgment for the agency's judgment." ' " *Welter v. Rowan Cty. Bd. of Comm'rs*, 160 N.C. App. 358, 361, 585 S.E.2d 472, 475-76 (2003).

Given that the superior court identified the correct standard of review, we now examine the record to determine whether this standard was correctly applied.

## B.  Was Dr. Land in compliance with the
## 1988 Union County Zoning Ordinance?

[2]  The Village argues that the trial court erred in ruling that Dr. Land was in compliance with the 1988 Ordinance, because the 1988 Ordinance regulated "every conceivable use of property . ... whether or not the use [wa]s specifically mentioned." The Village contends that since every use of real property was regulated by the county when Dr. Land bought the property in 1991, then Dr. Land was required to obtain a special use permit in order to establish his shooting range. We disagree.

The Village's argument rests on section 149 of the 1988 Ordinance:

> (a) The presumption established by this ordinance is that all legitimate uses of land are permissible within at least one zoning district with the county. Therefore, because the list of permissible uses set forth in Section 146 (Table of Permissible Uses) cannot be all-inclusive, those uses that are listed shall be interpreted liberally to include other uses that have similar impacts to the listed uses.

> (b) All uses that are not listed in Section 146 and that do not have impacts that are similar to those of the listed uses are prohibited. Nor shall Section 146 be interpreted to allow a use in one zoning district when the use in question is more closely related to another specified use that is permissible only in other zoning districts.

Both parties agree that section 146 does not mention shooting ranges. Thus, because subsection (a) requires that every use of land fit into a category listed in section 146, the Village contends that the most similar use, under the liberal application urged by subsection (a), is "privately-owned outdoor recreational facility." This particular category in section 146 necessitates a special use permit in residential zoning districts, and because Dr. Land never acquired a special use permit, the Village urges this Court to hold that Dr. Land was not compliant with the 1988 Ordinance. If Dr. Land was not compliant with the 1988 Ordinance, then the shooting range cannot be sanctioned by the subsequent Land Use Ordinance enacted by the Village.

The critical part of section 149 of the 1988 Ordinance is the presumption that all land uses not specifically listed or capable of being categorized are "prohibited." The superior court specifically rejected this presumption:

The 1988 County Ordinance does not expressly prohibit sports shooting ranges. In fact, the 1988 Ordinance does not mention shooting ranges or firing ranges at all. Respondents urge the construction that all uses not expressly permitted are impliedly prohibited. However, such a construction would prohibit any number of uses that have not been specifically enumerated in the 1988 Ordinance. As such, the Court expressly rejects this over-broad interpretation of the 1988 Ordinance. Therefore, Petitioner's use of the subject property as a shooting range is a prior nonconforming use which is "grandfathered" under the relevant ordinances.

\* Respondents would have the Court classify Petitioner's sports shooting range as a "Privately owned outdoor recreational facility such as a golf and country club, etc. (but not including campgrounds), not constructed pursuant to a permit authorizing the construction for some residential development" under § 6.210 of the 1988 Ordinance. However, the Court concludes that Petitioner's sports shooting range, which has never been open to the public and which was established appurtenant to a preexisting residential structure, is not properly classified under § 6.210.

\* It was not until the passage of the Union County Land Use Ordinance of 2001 that Union County first regulated the use of an "outdoor firing range." . . .

\* The terms of the 1988 County Ordinance are not ambiguous. However, even if they were, the Court would be compelled to interpret these ambiguities in Petitioner's favor. Unless an ordinance clearly prohibits a particular land use, that land use is allowed. This includes shooting ranges. This mandate for strict construction in favor of the landowner arises from a long line of cases, including *Yancey v. Heafner*, 268 N.C. 263, 150 S.E.2d 440 (1966) ("well-founded doubts as to the meaning of obscure provisions of a Zoning Ordinance should be resolved in favor of the free use of property"); *Sanford v. Dandy Signs, Inc.*, 62 N.C. App. 568, 303 S.E.2d 228 (1983) ("[elverything not clearly within the scope of the language used shall be excluded from the operation of the ordinances, taking the words in their natural and ordinary meaning"); and *Capricorn Equity Corp. v. Chapel Hill*, 334 N.C. 132, 431 S.E.2d 183 (1993) ("restrictions on usage [must be] construed in favor of the landowner").

LAND v. VILLAGE OF WESLEY CHAPEL

[206 N.C. App. 123 (2010)]

Like the trial court, we similarly reject the Village's interpretation of the 1988 Ordinance and the presumption established by section 149.

The text of the 1988 Ordinance clearly incorporates the following philosophy: everything is proscribed except that which is allowed. The problem with this philosophy, however, is that it fails to clearly place the public on notice as how a particular use is to be classified absent an explicit mention in the Land Use Ordinance. While the presumptive language may be useful in applying an ordinance with a comprehensive schedule of categories, it is of little value when no similar use is listed in any category.

In *Yancey v. Heafner*, the legislative philosophy apparent in the 1988 Ordinance was clearly rejected:

"Zoning ordinances should be given a fair and reasonable construction, in the light of their terminology, the objects sought to be attained, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the Ordinance as a whole. * * * **Zoning regulations are in derogation of common law rights and they cannot be construed to include or exclude by implication that which is not clearly their express terms.** It has been held that well-founded doubts as to the meaning of obscure provisions of a Zoning Ordinance should be resolved in favor of the free use of property."

268 N.C. at 266, 150 S.E.2d at 443 (quoting Yokley, *Zoning Law and Practice*, Second Edition (1962 supplement), Vol. 1, Section 184) (emphasis added).

The common law principle of the "free use of property" is clearly the antithesis of subsection (b) of section 149 of the 1988 Ordinance—the theory now advanced by the Village—and has been upheld in numerous cases other than those cited by the superior court. *See, e.g., In re Application of Construction Co.*, 272 N.C. 715, 718, 158 S.E.2d 887, 890 (1968) ("A zoning ordinance, however, is in derogation of the right of private property and provisions therein granting exemptions or permissions are to be liberally construed in favor of freedom of use."); *In re Couch*, 258 N.C. 345, 346, 128 S.E.2d 409, 411 (1962) (" 'Zoning ordinances are in derogation of the right of private property, and where exemptions appear in favor of the property owner, they should be liberally construed in favor of such owner.' ") (quoting *In re Appeal of Supply Co.*, 202 N.C. 496, 163 S.E.

462 (1932)); *Coleman v. Town of Hillsborough*, 173 N.C. App. 560, 564, 619 S.E.2d 555, 559 (2005) ("Zoning regulation is in derogation of common law property rights and therefore must be strictly construed to limit such derogation to that intended by the regulation.").

In its brief, the Village does not address the trial court's cited authority or attempt to distinguish this body of North Carolina case law. Were we to follow the logic of the 1988 Ordinance, a citizen seeking to use his land for otherwise legal purposes would have to speculate as to which governmentally permitted use was "similar to" a nebulous category in the county's Land Use Ordinance and then conform his conduct thereto. This approach leaves the landowner exposed to the arbitrary and capricious whims of zoning authorities who may disagree with a landowner's decision concerning "similarity of use." The law of this State does not favor this approach. Accordingly, we hold that the superior court correctly applied the *de novo* standard of review to reach its conclusion that, absent a clear Land Use Ordinance regulating shooting ranges, Dr. Land was not required to obtain a special use permit. Since the property was therefore being used for a prior non-conforming use, the superior court was also correct in concluding that the property was grandfathered under the Village's Land Use Ordinance.

The Village also argues that the Board of Adjustment properly concluded that Dr. Land's shooting range was a "privately owned outdoor recreational facility," and in support, the Village cites *Willow Wood Rifle & Pistol Club, Inc. v. Town of Carmel Zoning Bd. of Appeals*, 115 A.D.2d 742 (N.Y. App. Div. 2d Dep't 1985) (shooting range within zoning category named "annual membership clubs, including country, golf, swim and tennis clubs") and *Evergreen State Builders, Inc. v. Pierce County*, 516 P.2d 775 (Wash. Ct. App. 1973) (firing range properly classified as "privately operated recreational center" within the zoning ordinance). In light of the above-cited precedential authority from North Carolina, we can give no weight to these out-of-state authorities. Such theories, even if employed elsewhere, do not comport with statutory construction rules with which courts in this State must construe ambiguities in zoning ordinances. This assignment of error is overruled.

## C. Did Dr. Land "materially alter" his property, making it subject to the Village's Land Use Ordinance?

[3] The Village also contends that Dr. Land's alterations to the shooting range between 2007 and 2008 constituted a material alteration to

the property. The Village claims that since the property underwent a material alteration, the shooting range would have lost its grandfather status as a legal non-conforming use of the property under the 1988 Ordinance and cannot be allowed under the Village's Land Use Ordinance. We disagree.

The Village's Land Use Ordinance provides in part:

### Section 7.3  Nonconforming Uses of Land

Nonconforming uses of land, which may include structures incidental and accessory to the use of the land, such as but not limited to, storage yards for various materials, or areas used for recreational purposes, shall not be used for other nonconforming purposes, once the nonconforming use has been abandoned.

**7.3.1** No such nonconforming use of land shall be enlarged, increased or extended to occupy a greater area of land than was occupied at the effective date of initial adoption of this Ordinance.

**7.3.2** If said land use is abandoned for 180 days or more, or materially altered, the land use shall be considered discontinued and shall not be reestablished unless the use is in conformance with the regulations of the district in which it is located. *Material alteration for the purpose of this subsection is defined as change to size, contour, etc. to an extent of more than fifty percent (50%) of the replacement cost at the time of said alteration.*

**7.3.3** A nonconforming use of land shall not be changed to another nonconforming use of land.

(Emphasis added.)

In examining this portion of the Village's Land Use Ordinance to determine whether Dr. Land had made a "material alteration" to the "land use," the superior court stated:

In his cease-and-desist order of September 2008, the Zoning Administrator maintains that Petitioner's improvements to the property constitute a material alteration to the use—that is, a change to an extent of more than fifty percent of the replacement cost at the time of the alteration. The uncontroverted evidence in the record reveals otherwise, Petitioner spent approxi-

mately $2,000 in 1991; $1,000 in 1998; and $15,000 in 2008. In 1991, the land value alone of the subject property (excluding the house) was over $80,000 (in 1991 dollars). In 2008, the land value alone was $219,000 (in 2008 dollars). Two thirds of the property is used for the sports shooting range, which includes the firing area, the target area/backstop, and the buffer zone around the firing area.

Two thirds of $80,000 is $53,333. Two thirds of $219,000 is $146,000. These are the land values attributable to the shooting range in 1991 and 2008, respectively. As evidenced by these figures, Petitioner's expenditures have in no way approached the fifty percent level necessary to trigger the "material alteration" threshold. In addition, the frequency and duration of Petitioner's use of the subject property as a shooting range have not increased. Nor has the net size of the shooting range been expanded.

(Citations omitted.)

We agree with the superior court that Dr. Land did not materially alter his land. Mr. Langen, in his letter, offered no competent evidence of "replacement costs at the time of said alteration" as section 7.3.2 of the Village Land Use Ordinance requires. Village of Wesley Chapel Zoning Ordinance § 7.3.2 (Sept. 9, 2002). Instead, the record shows that Mr. Langen made the following general averments:

Therefore, as you have made improvements to the shooting range, including removal of wooden targets and installation of earthen berms, the improvements to the use would be in violation of any non-conforming use status. Specifically, the wooden targets were of very poor quality with negligible replacement value and installation of earthen berms is considered to be a material alteration to an extent of more that fifty percent of the replacement cost of the wooden targets.

During the hearing before the Board of Adjustment, the Village made this same assertion that Dr. Land had made a "material alteration" to his use of the property. However, in order to meet the percentage threshold under the Land Use Ordinance, the Village ignored the value of the real property constituting the shooting range to make its computation.

Mr. Langen's letter and the Village's corollary arguments before the Board of Adjustment fail to provide any competent evidence of a

violation of the Village's Land Use Ordinance as written, which was the Village's burden of proof. *City of Winston-Salem v. Concrete Co.,* 47 N.C. App. 405, 414, 267 S.E.2d 569, 575 (1980) ("The city had the burden of proving the existence of an operation in violation of its zoning ordinance."). In order to make a proper percentage calculation under section 7.3.2 of the Village's Land Use Ordinance, competent evidence would need to be provided of: (1) the costs which were expended by Dr. Land, which would provide the numerator for a percentage equation; and (2) the costs of replacing the private shooting range at the time of the alterations in 2007 and 2008, which would provide the denominator for the equation.

As to the denominator, the Village's Land Use Ordinance does not define "replacement cost"; however, the term's general meaning is: "The cost of a substitute asset that is equivalent to an asset currently held." *Black's Law Dictionary* 372 (8th ed. 2004). Applying this definition to section 7.3.2, the replacement cost of the shooting range must include not only the attachments to the land, but also the properly measured value of a substitute parcel of real property to which a new range could be attached. As the superior court points out, the calculations presented by the Village ignore in its computation of replacement costs any value associated with the cost of the land at the time of the replacement. Therefore, lacking any competent evidence of the denominator, which was the Village's burden, the replacement cost calculation cannot be made.

Given that no competent evidence shows that Dr. Land made any material alterations to the shooting range as defined specifically by the Village's Land Use Ordinance, we affirm the superior court in its conclusion that there was no material alteration of Dr. Land's property in 2007 and 2008. This assignment of error is overruled.

### III. CONCLUSION

Because Dr. Land was in compliance with the 1998 Ordinance, his use of the property was grandfathered under the Village's Land Use Ordinance. Since the Village has failed to carry its burden in showing that a "material alteration" has been made to Dr. Land's use of the property as defined by the Village's current Land Use Ordinance, Dr. Land's continued use of the shooting range is lawful. Based on our disposition of these issues in this case, we need not address the Village's remaining assignments of error or Dr. Land's remaining cross-assignment of error. Accordingly, the order of the superior court is

Affirmed.

Chief Judge MARTIN concurs.

Judge BEASLEY concurs with separate opinion.

BEASLEY, Judge, concurring with separate opinion.

I write separately only to point out that the costs of replacing the private shooting range (i.e. the denominator in the "material alteration" equation laid out by the majority) must include not only the land value at the time of the replacement but also the cost of replacing the *use* of the land. In concluding that Dr. Land's changes to his shooting range did not constitute a material alteration under § 7.3.2 of the Village Land Use Ordinance, the trial court compared the cost of the improvements to only the value of the land area used for the range. The trial court, however, was unable to perform the calculation contemplated by the ordinance because it did not have at its disposal any numbers associated with the replacement cost of the land use.

The Village contended that Dr. Land's firing range lost its grandfathered status when in November 2007 through March 2008 he spent approximately $15,000 on improvements thereto. As support for its determination, the Village argued that Dr. Land had spent $3,000 constructing the range—roughly $2,000 in 1991 when it was first erected and $1,000 to rotate the direction of fire and replace some railroad ties in 1999—and that the $15,000 spent after the ordinance was adopted equaled 500% of the replacement cost. The $3,000 figure, however, represents the cost of the initial improvement as of 1999, not the replacement cost of the use "at the time of said alteration" between 2007 and 2008. Thus, not only did the Village ignore in its computation of replacement costs any value associated with the land but also failed to present any evidence of the replacement cost of the use at the relevant time under the ordinance. As such, I would qualify the majority's conclusion—that the Village failed to meet its burden of showing material alteration because it ignored the land value—by emphasizing that the Village Land Use Ordinance also requires consideration of the land use and that the Village likewise neglected to present competent evidence of the cost of replacing said use at the time of the alteration at issue.