JIMMY RAY COLE, Petitioner v. JANICE FAULKNER, COMMISSIONER, NORTH CAROLINA DIVISION OF MOTOR VEHICLES, Respondent

No. COA01-1483

(Filed 31 December 2002)

**1. Motor Vehicles— mandatory driver's license revocation— reviewed by certiorari**

The trial court did not err by reviewing by writ of certiorari a DMV decision to cancel the conditional restoration of driving privileges under N.C.G.S. § 20-19(e). Although N.C.G.S. § 20-25 provides a right to de novo review in superior court where there is a discretionary cancellation of a driver's license by DMV, revocation in this case was mandatory and N.C.G.S. § 20-25 did not apply. However, certiorari is the appropriate process to review the proceedings of inferior courts and bodies and officers exercising judicial or quasi-judicial functions where no appeal is provided by law.

**2. Motor Vehicles— driver's license revocation—whole record—malfunctioning Ignition Interlock**

In a certiorari review of DMV's revocation of the conditional restoration of a driver's license, the Court of Appeal's scope of review was whether the superior court applied the appropriate standard properly. The whole record, reviewed by the trial court, did not support the revocation because DMV relied on Ignition Interlock readings indicating alcohol consumption and petitioner produced evidence that the device malfunctioned and that he had

not consumed alcohol on either of the occasions relied upon by the DMV.

Appeal by petitioner from judgment entered 8 October 2001 by Judge Henry W. Hight, Jr. in Wake County Superior Court. Heard in the Court of Appeals 11 September 2002.

*Kirk, Kirk, Howell, Cutler & Thomas, L.L.P, by Joseph T. Howell and Jeffrey M. Cutler, for petitioner-appellant.*

*Roy Cooper, Attorney General, by Jeffrey R. Edwards, Assistant Attorney General, for the State.*

THOMAS, Judge.

The trial court here affirmed an order of the Division of Motor Vehicles (DMV) cancelling the conditional restoration of driving privileges for petitioner, Jimmy Ray Cole. He now appeals and for the reasons herein, we reverse.

Cole's driving privileges had been revoked due to convictions for driving while impaired from 1973 to 1995. On 17 July 2000, a hearing was held with the DMV conditionally restoring his privileges pursuant to N.C. Gen. Stat. § 20-19(e).

As part of the conditional restoration agreement, Cole consented to certain conditions, including that he not operate a motor vehicle after consuming alcohol. Further, it was mandated that Cole "[o]nly operate a vehicle properly equipped and maintained with an Ignition Interlock device approved by the North Carolina Department of Motor Vehicles." The Ignition Interlock device requires a driver to pass an alcohol test by blowing into the device. The results are then recorded as logged events. If the device recognizes alcohol through the breath test, the vehicle is programmed not to start. Occasionally, an alcohol test will also be required while the vehicle is running. Cole agreed that he would not adjust or tamper with the ignition interlock device, and that he would have monitoring checks performed on it every sixty days.

On 11 April 2001, the DMV notified Cole to appear at a hearing to determine whether he had violated any of the provisions of the conditional restoration agreement. Evidence at the hearing showed that Cole had registered alcohol readings three different times, 0.02 on 4 November 2000, 0.11 on 22 December 2000, and 0.082 on 11 January 2001. There was also evidence that shortly after these readings, the

device registered no alcohol level readings. The November reading registered a "warn" attempt on the interlock system. Only the two "fail" readings, December and January, were the subject of inquiry at the hearing.

Cole testified that he had not consumed alcohol, but did have a soft drink before the December reading and coffee before the January reading. He said that his vehicle cranked on his third try in December, after he had consumed a soft drink. He said he did not know what was wrong with the device and subsequently went to Monitech, which services it. Monitech technicians told Cole to make sure he did not have anything in his mouth when he blew into the device.

In January, Cole was again unable to start his vehicle due to an alcohol reading of 0.082. He claimed only to have had decaffeinated coffee. Cole returned to the coffee shop and called Sergeant Jody Wall, a police officer with the Wendell Police Department. Wall administered an alco-sensor test, which registered 0.00. After the test, Wall and Cole walked to Cole's vehicle, which immediately started on his next attempt. Cole then took his vehicle back to Monitech for servicing. The ignition interlock device tested within calibration standards.

Cole stated he was the only one to blow in the device on these two dates. His vehicle is sometimes driven by his girlfriend and an employee, who do not drink.

At the close of all the evidence, the DMV's hearing officer determined there was sufficient evidence that Cole had violated the terms of the agreement. The restoration of his license was cancelled and the original permanent revocation of his driving privileges was placed back into effect.

Cole petitioned for review by the trial court, which affirmed the decision. It found the DMV did not act in an arbitrary and capricious manner by cancelling Cole's conditional restoration of his driving privileges.

[1] By his first assignment of error, Cole contends the trial court erred by reviewing the DMV's decision under a petition for writ of certiorari. Instead, he argues the trial court should have applied *de novo* review. We disagree.

Where the trial court sits without a jury, this Court reviews whether the competent evidence supports the trial court's findings,

and whether the findings in turn support the conclusions of law. *Meekins v. Box*, 152 N.C. App. 379, 567 S.E.2d 422 (2002).

Section 20-25 of the North Carolina General Statutes, titled "Right of appeal to court," provides:

> Any person denied a license or whose license has been canceled, suspended or revoked by the Division, *except where such cancellation is mandatory under the provisions of this Article*, shall have a right to file a petition within 30 days thereafter for a hearing in the matter in the superior court of the county wherein such person shall reside, or to the resident judge of the district or judge holding the court of that district, or special or emergency judge holding a court in such district in which the violation was committed, and such court or judge is hereby vested with jurisdiction and it shall be its or his duty to set the matter for hearing upon 30 days' written notice to the Division, and thereupon to *take testimony and examine into the facts of the case, and to determine* whether the petitioner is entitled to a license or is subject to suspension, cancellation or revocation of license under the provisions of this Article. Provided, a judge of the district court shall have limited jurisdiction under this section to sign and enter a temporary restraining order only.

N.C. Gen. Stat. § 20-25 (2001) (emphasis added). Thus, a right to *de novo* review in superior court exists where there is a *discretionary* denial, cancellation, suspension, or revocation of a driver's license by the DMV. *See In re: Revocation of License of Wright*, 228 N.C. 301, 303, 45 S.E.2d 370 (1947), *reh'g denied*, 228 N.C. 584, 46 S.E.2d 696 (1948).

However, where the cancellation or revocation of the license is mandatory, there is no right to appeal under section 20-25. N.C. Gen. Stat. § 20-25; *Penuel v. Hiatt*, 100 N.C. App. 268, 268-69, 396 S.E.2d 85, 85-86 (1990).

Here, Cole's license was conditionally restored under N.C. Gen. Stat. § 20-19(e). Pursuant to that section, Cole entered into an agreement with the DMV. *See id.* (providing that the DMV may place reasonable conditions or restrictions on the person for any period up to three years from the date of restoration). Under the agreement, "a violation of any term, restriction, or condition . . . *shall* result in a termination of this restoration and the license continues in the original state of revocation." (Emphasis added). Thus, once the

DMV determined that a condition has been violated, revocation was mandatory. Accordingly, section 20-25 does not provide for review of this decision.

Although a superior court does not have authority to review mandatory license revocations by the DMV, a petitioner may appeal a permanent revocation of a driver's license pursuant to section 20-19(e) by petitioning for a writ of certiorari. *Davis v. Hiatt*, 326 N.C. 462, 390 S.E.2d 338 (1990). In *Davis*, the petitioner's driving privileges were permanently revoked pursuant to N.C. Gen. Stat. § 20-17(2), and, as here, N.C. Gen. Stat. § 20-19(e). In holding that the revocation could be reviewed by the superior court by writ of certiorari, the *Davis* Court stated:

> It is well settled in this jurisdiction that certiorari is the appropriate process to review the proceedings of inferior courts and of bodies and officers exercising judicial or quasi-judicial functions in cases where no appeal is provided by law.

*Davis*, 326 N.C. at 465, 390 S.E.2d at 340, (quoting *Russ v. Board of Education of Brunswick County*, 232 N.C. 128, 130, 59 S.E.2d 589, 591 (1950)).

Therefore, the trial court did not err in reviewing the DMV's decision by writ of certiorari and we overrule this assignment of error.

**[2]** Cole next argues that the trial court erred in affirming the revocation of the conditional restoration of his driver's license. Specifically, he argues that even when applying *certiorari* review, the whole record is devoid of competent evidence to support the DMV's decision. We agree.

When reviewing an appeal from a petition for writ of certiorari in superior court, this Court's scope of review is two-fold: (1) examine whether the superior court applied the appropriate standard of review; and, if so, (2) determine whether the superior court correctly applied the standard. *ACT-UP Triangle v. Comm'n for Health Servs.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (citations omitted). Here, the superior court applied a whole record review. Therefore, we must determine whether the court properly did so.

Under the whole record test, the trial court reviews the record *de novo* for errors of law to determine if competent, material, and substantial evidence exists, based on the whole record, to support the

decision, and determines whether the decision was arbitrary and capricious. *Id.* at 54-55, 557 S.E.2d at 634. Significantly, the whole record test requires the court to consider both evidence justifying the agency's decision and contrary evidence that could lead to a different result. *In re Appeal by McCrary*, 112 N.C. App. 161, 167-68, 435 S.E.2d 359, 364 (1993). However, the test does not allow the reviewing court to replace the agency's judgment when there are two reasonably conflicting views, although the court could have justifiably reached a different result under *de novo* review. *Id.*

The record here shows that at the end of the non-compliance hearing, the DMV stated the terms of the agreement had not been met. After Cole's attorney inquired as to what terms were being referred to, the DMV responded "alcohol is being used." Thus, the DMV based its revocation on the December and January alcohol readings.

Cole, however, counters that the readings were erroneous because the device malfunctioned. He states that he only consumed a soft drink before the December reading and coffee before the January reading. Cole emphasized the evidence establishing subsequent readings taken shortly thereafter did not register any alcohol. Specifically, he points to the affidavits from Danny and Martha Jeffries, owners of Fleet Fuels, the service station where the December reading occurred. Mr. Jeffries asserts that Cole's second attempt to start his car was successful. Additional evidence was presented showing that after the January reading, Cole called the police and was administered an alco-sensor field test that revealed a blood alcohol level of 0.00. Finally, according to a technician employed by Monitech, Inc., the manufacturer of the device, the readings were "consistent with fast-dissipating mouth contaminants."

Accordingly, we hold that the record lacked substantial evidence to support the conclusion that Cole had consumed alcohol and thereafter operated a motor vehicle.

REVERSED.

Judges WALKER and McGEE concur.