GEER, Judge.
Petitioner Charles Benet Hargrove, Jr. appeals from the trial court's decision upholding the decision of the Division of Motor Vehicles ("DMV") to revoke petitioner's conditional driver's license. Based upon our review of the record, we hold that the trial court applied the proper standard of review and correctly determined that the DMV did not act in an arbitrary and capricious manner. Accordingly, we affirm.
On 28 June 1995, petitioner's driver's license was suspended due to multiple convictions for driving while impaired. On 21 January 1998, petitioner's driver's license was again suspended dueto multiple convictions for driving while impaired. On 19 July 2001, the DMV entered into an agreement with petitioner based upon which it conditionally restored petitioner's driving privileges. Petitioner agreed that if he violated the agreement, the restoration of his privileges would be revoked. One of the conditions was that petitioner would not operate or attempt to drive any motor vehicle on a street, highway, or public vehicular area after having consumed alcohol. Petitioner also agreed to only operate a vehicle properly equipped with an ignition interlock device.
On 26 February 2003, the DMV held a compliance hearing to determine whether petitioner had violated the restoration agreement. Monitech, Inc., the company responsible for installing and monitoring the ignition interlock device, had reported to DMV that petitioner had several high alcohol readings and failed to take a mandatory standing retest after failing a rolling retest. At the hearing, petitioner claimed that the high alcohol readings were caused by his drinking grape soda. Monitech technicians stated in affidavits that the readings were "consistent with true blood alcohol content" and suggested that petitioner had "possible assistance on pass test." The technicians also denied that food could cause alcohol readings that high. Following the hearing, the DMV revoked petitioner's conditional license restoration.
On 26 March 2003, petitioner filed a "Notice of Appeal, Complaint/Petition and Motion for Temporary Restraining Order andApplication for Writ of Certiorari." On 31 March 2003, the Richmond County Superior Court entered an order restraining the DMV from suspending or revoking petitioner's driving privileges pending a hearing, which was held on 20 January 2004.
On 17 May 2004, the court entered an order agreeing to consider petitioner's appeal as a petition for writ of certiorari. The court then found:
Upon review of the whole record under a petition for writ of certiorari, the court finds no evidence in the record that the decision of DMV to deny petitioner's conditional restoration of his driving privileges was in violation of constitutional provisions, was in excess of statutory authority, was made upon unlawful procedure, was affected by error of law, was unsupported by substantial evidence, or was arbitrary and capricious.
Based on that determination, the court dismissed the petition for writ of certiorari with prejudice and ordered that the DMV's "denial of Petitioner's license is affirmed." Petitioner appealed.
Petitioner first argues that the trial court erred by reviewing his appeal from the DMV's decision under the standards applicable to a petition for writ of certiorari rather than conducting a de novo review pursuant to N.C. Gen. Stat. § 20-25 (2003). This argument is not, however, encompassed by any of petitioner's assignments of error. "The scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule 10." N.C.R. App. P. 10(a). Accordingly, we decline to address this argument. Petitioner next contends that the trial court erred by treating his appeal as from a denial of a license, when it was from a revocation of restored conditional driving privileges. While it does appear that the trial court's categorization of the DMV's order as a denial of a conditional restoration was in error, it was, under the circumstances of this case, a mere erroneous description of the action under review and harmless. Despite the error, (1) it was clear from the petition and records before the court what type of action it was reviewing, (2) the trial court used the applicable standard of review, and (3) there is no ambiguity regarding the court's holding. This assignment of error is, therefore, overruled.
Petitioner next argues that the DMV hearing officer erred in relying on the affidavits submitted by the Monitech technicians in reaching his decision. Petitioner contends that the technicians were not experts and that, in any event, their expressions of opinion invaded the province of the finder of fact.
Rule 702(a) of the Rules of Evidence states:
If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.
N.C. Gen. Stat. § 8C-1, Rule 702(a) (2003). Here, the affidavits submitted by Monitech stated that the technicians had "been trained and certified in the use, maintenance, and monitoring of the ignition interlock system." The technicians' training andexperience qualified them to assist the hearing officer in determining whether the ignition interlock device functioned properly. Further, under Rule 704, "testimony in the form of an opinion or inference is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Thus, the hearing officer did not abuse his discretion in considering the affidavits, and the trial court correctly concluded that the hearing officer's decision was based on competent evidence.
Petitioner finally argues that the hearing officer acted arbitrarily and capriciously in revoking his conditional license because the record was devoid of competent evidence to support a revocation. "When reviewing an appeal from a petition for writ of certiorari in superior court, this Court's scope of review is two-fold: (1) examine whether the superior court applied the appropriate standard of review; and, if so, (2) determine whether the superior court correctly applied the standard." Cole v. Faulkner, 155 N.C. App. 592, 596, 573 S.E.2d 614, 617 (2002). The appropriate standard of review in considering whether a decision was arbitrary and capricious, as petitioner contends, is the "whole record" test. In re Appeal by McCrary, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993) ("If, however, appellant questions (1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the 'whole record' test.").
The trial court's decision indicates that it applied the whole record test, as it was required to do. The remaining question iswhether the court properly applied that test when reviewing the DMV's decision. Our Supreme Court has stated that:
The "whole record" test requires the reviewing court to examine all competent evidence (the "whole record") in order to determine whether the agency decision is supported by "substantial evidence." Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Therefore, if we conclude there is substantial evidence in the record to support the agency's decision, we must uphold it. We note that while the whole-record test does require the court to take into account both the evidence justifying the agency's decision and the contradictory evidence from which a different result could be reached, the test does not allow the reviewing court to replace the agency's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it de novo.
Meads v. N.C. Dep't of Agric., 349 N.C. 656, 663, 509 S.E.2d 165, 170 (1998) (internal quotation marks and citations omitted).
Based on our review of the record, we agree with the trial court that substantial evidence exists to support the DMV's conclusion that petitioner violated the terms of his restoration agreement. The record shows that petitioner registered high alcohol readings of .159 and .175 on 29 January and 30 January 2003. Affidavits from Monitech technicians stated that on those dates, the ignition interlock device was operating properly and that the readings were indicative of petitioner's blood alcohol content. The affidavits further stated that petitioner's refusal to perform a mandatory retest on 29 January following the .159 reading was consistent with an accurate alcohol reading, and thereadings on 30 January following the .175 reading - including a "pass" immediately after the .175 test, followed by 12 minutes driving, and then an extended period of inactivity - suggested "possible assistance" in obtaining the pass test. Although petitioner blamed the high alcohol readings on grape soda, technicians stated that the high reading could not be caused by food. Furthermore, petitioner did not explain his failure to stop for a standing retest after failing the rolling retest with a reading of .159.
Based on the evidence before the hearing officer, the decision to revoke the restoration of petitioner's conditional license was not arbitrary and capricious. Accordingly, we conclude that the trial court did not err by upholding respondent's decision.
Affirmed.
Judges BRYANT and ELMORE concur.
Report per Rule 30(e).