CHARLES W. DOSS, Petitioner,
v.
GEORGE E. TATUM, COMMISSIONER, DIVISION OF MOTOR VEHICLES, Respondent.
No. COA07-1426
Court of Appeals of North Carolina
Filed August 5, 2008
Attorney General Roy A. Cooper, III, by Assistant Attorney General Kathryne E. Hathcock, for respondent-appellee.
K.E. Krispen Culbertson, for petitioner-appellant.
STROUD, Judge.
Petitioner appeals from a judgment upholding the decision of the Division of Motor Vehicles ("DMV") to revoke his conditional driver's license. Because the superior court applied the proper standard of review and did not err in concluding that DMV's ruling was not arbitrary and capricious, we affirm.
On 14 November 1990, DMV suspended petitioner's driver's license after his third conviction for driving while impaired. Petitioner was granted a conditional restoration of his driving privileges on or about 28 May 2004, pursuant to N.C. Gen. Stat. § 20-19(e) (2003). As part of his conditional restoration agreement, petitioner was forbidden to drive or attempt to drive any motor vehicle on a street, highway, or public vehicular area after consuming alcohol. His car was equipped with an ignition interlock device by Monitech, Inc. ("Monitech"), in order to measure his blood alcohol concentration (BAC) when he attempted to start the car. See N.C. Gen. Stat. § 20-17.8 (2003). Petitioner agreed that he would "only operate a vehicle properly equipped and maintained with an ignition interlock device approved by [DMV,]" and that his driving privilege would be terminated upon "a violation of the Ignition Interlock Restriction under G.S. 20.17.8 during the period of conditional restoration."
On 25 October 2006, DMV Hearing Officer Robert Gray Southern held a non-compliance hearing in response to a report from Monitech of petitioner's violation of the ignition interlock restriction of his conditional driving privilege. The hearing officer admitted the report into evidence, which indicated two "FAIL BAC" readings of .052 and .047 on petitioner's interlock device at 2:25:00 p.m. and 2:30:24 p.m. on 7 July 2006. By affidavit, a Monitech technician "certified in the use, maintenance, and monitoring of the ignition interlock system" affirmed that petitioner's interlock device registered blood alcohol content ("BAC") readings of .052 and .047 on 7 July 2006; that petitioner's interlock device "was operational and performing within established test standards" on the date of the readings; and that data log records on petitioner's interlock device thus "indicate true BAC reading[s.]" The technician further affirmed that, inasmuch as "there was no follow up pass [reading] until the next day," 8 July 2006, the "BAC readings could be true."
Petitioner attributed the high BAC readings on the interlock device to "two capsful" of codeine cough syrup he had taken for a "real bad cold" on 7 July 2006. He also noted that he used his "puffer" to treat his chronic obstructive pulmonary disease ("COPD") before his second unsuccessful attempt to start the car. When the hearing officer observed that the label on petitioner's cough syrup bottle reflected that the prescription was initially filled on 3 August 2006, petitioner replied that he "already had . . . one bottle" and had been taking the same cough medicine for seven or eight years. Petitioner further claimed that he had been able to start his car "4 or 5 hours" later on 7 July 2006, testifying, "I went out there and bl[ew into the Interlock device], it cranked right up. No problem[.]" The hearing officer noted that the interlock data log recorded the two "Fail" BAC readings at 2:25 p.m. and 2:30 p.m. on 7 July 2006, and that "there's not another recorded blow until July the 8th." Petitioner responded as follows:
Well, now, . . . I'm wrong, I'm sorry, I don't, maybe I didn't, maybe I, I don't know whether I bl[ew] it or not. I thought I did. I want, I thought I tried it . . ., but I don't know whether I did or not. I might have just stayed home. I don't really know sir. . . . [I]t wasn't due to drinking sir. It was just the cough syrup, it was not drinking sir,. . . .
After hearing petitioner's evidence and closing argument, the hearing officer concluded that he had violated the terms of his conditional restoration agreement.
On 26 October 2006, DMV provided petitioner with official notice that his conditional driving privilege had been cancelled pursuant to N.C. Gen. Stat. §§ 20-17(2), and 20-19(e). Petitioner filed a petition for writ of certiorari in superior court to review the administrative decision.
In its judgment affirming DMV's decision, the superior court made the following findings:
Upon review of the whole record under a Petition for Writ of Certiorari, the Court finds substantial evidence in the record that the decision of the Respondent to cancel Petitioner's conditional restoration of his driving privileges was not in violation of constitutional provisions, was not in excess of statutory authority, was made upon lawful procedure, was unaffected by error of law, was supported by substantial evidence, and was neither arbitrary nor capricious.
Petitioner filed timely notice of appeal.
On appeal, petitioner claims that the superior court erred in upholding the decision of the DMV hearing officer. While conceding that the court applied the correct, "whole record" standard of review, petitioner contends that the evidence of record did not support the hearing officer's finding that the readings recorded by petitioner's interlock device on 7 July 2006 represented his "true BAC" and thus a violation of his conditional restoration agreement. Petitioner argues that his hearing testimony showed that the high BAC readings were caused by residual alcohol in his mouth from either his prescription cough syrup or the inhaler he used to treat his COPD.
In reviewing the superior court's ruling on a petition for writ of certiorari, we must "(1) examine whether the superior court applied the appropriate standard of review; and, if so, (2) determine whether the superior court correctly applied the standard." Cole v. Faulkner, 155 N.C. App. 592, 596, 573 S.E.2d 614, 617 (2002) (citing ACT-UP Triangle v. Comm'n for Health Servs., 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997)). As to the first prong of our analysis, the judgment reflects that the superior court correctly identified the "whole record review" standard applied to DMV's revocation of a conditional driving privilege under N.C. Gen. Stat. §§ 20-17(2), and 20-19(e). Cole, 155 N.C. App. at 596, 573 S.E.2d at 617. As to the second prong, this Court has described the correct application of this standard of review as follows:
Under the whole record test, the trial court reviews the record de novo for errors of law to determine if competent, material, and substantial evidence exists, based on the whole record, to support the decision, and determines whether the decision was arbitrary and capricious. Significantly, the whole record test requires the court to consider both evidence justifying the agency's decision and contrary evidence that could lead to a different result. However, the test does not allow the reviewing court to replace the agency's judgment when there are two reasonably conflicting views, although the court could have justifiably reached a different result under de novo review.
Id. at 596-97, 573 S.E.2d at 617 (citations omitted). We hold that the superior court correctly applied the whole record test in affirming the agency decision. We agree with the court that substantial evidence supported the hearing officer's finding that petitioner violated the terms of his conditional release agreement by attempting to start his car while having a BAC reflected in the interlock data log of 7 July 2006. The record includes Monitech's report of the data recorded by petitioner's interlock device on 7-8 July 2006, as well as an affidavit from the Monitech technician affirming that "[t]he pattern of alcohol . . . FAILS from saved data log records indicate true BAC reading[s.]" (Emphasis in original.) The record further reflects that the hearing officer considered petitioner's evidence but ultimately considered it not to be credible. In support of his finding that the interlock readings from 7 July 2006 reflected "a true BAC[,]" the hearing officer noted that the cough syrup introduced by petitioner "was received after the date in questeioned [sic]" and cited "the time that lapsed from the second blow to the blow the next day[.]" The record further supports the superior court's conclusion that the hearing officer did not reach his decision in an arbitrary or capricious manner. Accordingly, we affirm the judgment.
Affirmed.
Chief Judge MARTIN and Judge CALABRIA concur.
Report per Rule 30(e).