An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-889

NORTH CAROLINA COURT OF APPEALS

Filed: 17 June 2014

SAMMY'S AUTO SALES, INC. & FRED
EUGENE LaCLAIRE,
    Petitioners

v.

                         Robeson County
                         No. 12 CVS 134

COMMISSIONER OF DIVISION OF MOTOR
VEHICLES MICHAEL D. ROBERTSON,
    Respondent

Appeal by respondent from order and amended order entered 23 May 2013 by Judge Thomas H. Lock in Robeson County Superior Court. Heard in the Court of Appeals 6 January 2014.

    *Attorney General Roy Cooper, by Assistant Attorney General Christopher W. Brooks, for Respondent-Appellant.*

    *Locklear, Jacobs, Hunt & Brooks, by Mark D. Locklear, for Petitioners-Appellees.*

    ERVIN, Judge.

Respondent Michael D. Robertson, Commissioner of the North Carolina Division of Motor Vehicles, appeals from an order and an amended order entered by the trial court that reversed the Commissioner's decision to suspend Petitioners' licenses to perform emissions testing procedures and operate an emissions testing station and to assess civil penalties against them for alleged violations of N.C. Gen. Stat. § 20-183.8C(a)(2). On

appeal, the Commissioner argues that the trial court erred by reversing the final agency decision on the grounds that the record contained substantial evidence tending to show that Petitioners had, in fact, violated the applicable emissions testing rules. After careful consideration of Respondent's challenge to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order and amended order should be reversed.

## I. Factual Background

### A. Substantive Facts

#### 1. Commissioner's Evidence

Petitioner Sammy's Auto Sales, Inc., was licensed as a North Carolina Motor Vehicle Emission Equipment Inspection Station by the North Carolina Division of Motor Vehicles while Petitioner Fred Eugene LaClaire was a licensed Emission Inspection Mechanic. In 2010, Joanne Beasley purchased a 2007 burgundy Chevrolet HHR from Sammy's Auto Sales. The Chevrolet HHR that Ms. Beasley purchased had a Vehicle Identification Number of 3GNDA13D57S617293 and a matching Power Train Control Module Vehicle Identification Number[1] of 3GNDA13D57S617293 and

---

[1] The Powertrain Control Module is the on-board computer that monitors both engine and transmission functions. The PCM-VIN is a vehicle's identification number stored in the PCM.

had previously satisfied required State emissions inspection standards.

Approximately eight months after Ms. Beasley purchased the Chevrolet HHR, the vehicle's "check engine" light came on. As a result, Ms. Beasley took the vehicle to Sammy's Auto Sales for examination and repair. When Ms. Beasley picked up her vehicle two days later, she was told that "some mechanical work" had been done, that two sensors had been replaced, and that the "check engine" light was now off. Although Ms. Beasley drove her vehicle home and parked it without incident, the "check engine" light came back on the following day. As a result, Ms. Beasley took her vehicle back to Sammy's Auto Sales.

On 27 April 2011, while Mr. Beasley's Chevrolet HHR was in the possession of Sammy's Auto Sales, Mr. LaClaire purported to conduct a State emissions inspection of that vehicle. A few days after she dropped her car off for the second time, Ms. Beasley returned to Sammy's Auto Sales to retrieve her vehicle and was informed that the vehicle had passed a State emissions inspection. However, the vehicle's "check engine" light was still on at the time that Ms. Beasley regained possession of her Chevrolet HHR.

On or about 3 May 2011, Aaron L. Carter, an inspector for the NCDMV License and Theft Bureau, received a report that an

activity known as "clean scanning" was being conducted by Mr. LaClaire at Sammy's Auto Sales. More specifically, Mr. LaClaire was alleged to have "[u]se[d] a test-defeating strategy when conducting an emissions inspection by changing the emissions standards for a vehicle by . . . using data provided by the on-board diagnostic (OBD) equipment of another vehicle to achieve a passing result" in violation of N.C. Gen. Stat. § 20-183.8C(a)(2). As a result, Inspector Carter undertook an investigation of the allegations that had been made against Mr. LaClaire.

At an early point in his investigation, Inspector Carter determined that Ms. Beasley's Chevrolet HHR had been inspected at Sammy's Auto Sales by Mr. LaClaire on 27 April 2011 and that the VIN of 3GNDA13D57S617293 and the PCM-VIN of 3GNDA13D08S617431 reported to have been associated with that inspection did not match. As a result, Inspector Carter visited Sammy's Auto Sales on 4 May 2011 and determined that the PCM-VIN of 3GNDA13D08S617431 reported in connection with the inspection of Ms. Beasley's Chevrolet HHR actually belonged to a 2008 white Chevrolet HHR that was included in the inventory maintained by Sammy's Auto Sales and physically located on Sammy's Auto Sales' lot. The 2008 white Chevrolet HHR vehicle had also been inspected at Sammy's Auto Sales in the recent past, with

matching VIN and PCM-VIN figures having been reported in connection with that inspection. After attaching a scan tool to the onboard diagnostic computer of the 2008 white Chevrolet HHR, Inspector Carter determined that the VIN and PCM-VIN reported at that time matched and that no emission-related trouble codes were reported in connection with that vehicle.

After examining the 2008 white Chevrolet HHR, Inspector Carter spoke with Mr. LaClaire about the allegations that had been made against him. During the course of that conversation, Mr. LaClaire told Inspector Carter that he could not have mistaken the 2007 burgundy Chevrolet HHR owned by Ms. Beasley for the 2008 white Chevrolet HHR that Inspector Carter found on the Sammy's Auto Sales lot because one vehicle was white and the other was burgundy. In addition, Mr. LaClaire told Inspector Carter that Ms. Beasley's Chevrolet HHR had been giving him problems and that he had been unable to get the vehicle in question to pass inspection. Finally, Mr. LaClaire expressed frustration over the difficulties that he had experienced in getting the "check engine" light in Ms. Beasley's Chevrolet HHR to go off. However, Mr. LaClaire never admitted to having "clean scanned" Ms. Beasley's vehicle, intentionally or otherwise. Sammy Cox, the owner of Sammy's Auto Sales, would not allow Mr. LaClaire to provide a written statement during the

course of Inspector Carter's investigation on the grounds that, in the absence of such a statement, it would be nearly impossible for the Division of Motor Vehicles to obtain a "conviction."

On the same date, Inspector Carter spoke with Ms. Beasley, who confirmed that she was continuing to have trouble with the "check engine" light coming on in her Chevrolet HHR. After obtaining permission to inspect Ms. Beasley's vehicle, Inspector Carter determined that the burgundy HHR's "check engine" light was still on, that it was reporting an emissions-related trouble code, and that it had, contrary to the results shown for the 27 April 2011 inspection performed by Mr. LaClaire, a matching VIN and PCM-VIN of 3GNDA13D57S617293. Following this meeting, Ms. Beasley voluntarily agreed to provide a written statement concerning the problems and related inspection process involving her vehicle.

On 6 May 2011, Inspector Carter checked the records of the North Carolina emission testing system and discovered the presence of entries indicating that Ms. Beasley's burgundy Chevrolet HHR had passed an inspection at Sammy's Auto Sales on 6 May 2011 that revealed the presence of a matching VIN and PCM-VIN of 3GNDA13D57S617293. In light of this fact and the fact that the 2007 burgundy Chevrolet HHR's VIN and PCM-VIN matched

in a prior State emissions inspection conducted on 9 December 2009, Inspector Carter concluded that the PCM-VIN in Ms. Beasley's vehicle had not been changed prior to the inspection that Mr. LaClaire claimed to have conducted on 27 April 2011. As a result, Inspector Carter concluded that Mr. LaClaire did, in fact, use a test-defeating strategy when conducting an emissions inspection of Ms. Beasley's vehicle by using the data provided by the on-board diagnostic equipment of the 2008 white Chevrolet HHR in lieu of that produced by Ms. Beasley's 2007 burgundy Chevrolet HHR in order to ensure a passing result.

## 2. Petitioners' Evidence

According to Mr. LaClaire, Ms. Beasley's car was in the shop at Sammy's Auto Sales on 27 April 2011 for the purpose of being inspected. At the time that Ms. Beasley's 2007 burgundy Chevrolet HHR was in the inspection bay, the 2008 white Chevrolet HHR was in the next bay, which was about twenty feet away, having its battery recharged. Mr. LaClaire asserted that protective mats had been placed over the front of both vehicles in such a manner as to make it difficult to differentiate between them, that the equipment utilized to conduct the required emissions testing was located in front of the 2007 burgundy Chevrolet HHR, and that the cables utilized in connection with the emissions testing process were long enough

to have reached either of the two vehicles. Although Mr. LaClaire was supposed to have inspected the 2007 burgundy Chevrolet HHR, he asserted that it was possible that he had connected the wrong vehicle given that it was a busy day and the hoods on both cars had been raised. In spite of his denial that he had intentionally "clean scanned" the 2007 burgundy Chevrolet HHR on 27 April 2011, Mr. LaClaire admitted that he did not remember which vehicle he actually inspected on 27 April 2011.

Mr. Cox was not in the inspection area on 27 April 2011. However, Mr. LaClaire told him that "he may have hook[ed] the wrong car [for inspection]." After being informed of the alleged "clean scan" of the 2007 burgundy Chevrolet HHR, Mr. Cox had Ms. Beasley's vehicle returned to Sammy's Auto Sales on 6 May 2011 for the performance of additional work given that the "check engine" light was still illuminated. Ms. Beasley's vehicle passed the emissions inspection on 6 May 2011 following the replacement of several sensors.

## B. Procedural History

Sammy's Auto Sales and Mr. LaClaire each received a notice of violation issued by the Division of Motor Vehicles, alleging that a Type I violation pursuant to N.C. Gen. Stat. § 20-183.8C(a)(2) had occurred and proposed that the emission inspection station license held by Sammy's Auto Sales and the

emission inspector mechanic license held by Mr. LaClaire be suspended for 6 months, that a civil penalty in the amount of $250.00 be assessed against Sammy's Auto Sales, and that a civil penalty of $100.00 be assessed against Mr. LaClaire. After receiving these notices of violation, both Petitioners requested that an administrative hearing be convened for the purpose of allowing them to contest the appropriateness of the proposed sanctions. As a result, a hearing was held on 10 October 2011 before Hearing Officer F. Milo McBryde. At the conclusion of the administrative hearing, Hearing Officer McBryde determined that both Petitioners had committed a Type I violation and sustained the proposed license suspensions and civil penalties.

After Hearing Officer McBryde decided to sustain the notices of violation, Petitioners sought review of that decision by the Commissioner and submitted written arguments in support of their contention that Hearing Officer McBryde had erroneously upheld the proposed suspensions and civil penalties. Following a review of the record and a consideration of the arguments submitted on behalf of Petitioners, the Commissioner affirmed Hearing Officer McBryde's decision.

On 18 January 2012, Petitioners filed a petition seeking judicial review of the Commissioner's decision in the Robeson County Superior Court. On 2 February 2012, the Commissioner

filed a response to Petitioners' petition.  The petition for judicial review came on for hearing before the trial court at the 18 February 2013 civil session of Robeson County Superior Court.  On 23 May 2013, the trial court entered an order and an amended order reversing the Commissioner's decision pursuant to N.C. Gen. Stat. § 150B-51(b)(5), which authorizes a reviewing court to modify or reverse an agency decision that is "[u]nsupported by substantial evidence . . . in view of the entire record as submitted."[2]  The Commissioner noted an appeal to this Court from the trial court's orders.

## II. Substantive Legal Analysis

The trial court's decision to overturn the Commissioner's determination that Petitioners should be sanctioned for violating the provisions of N.C. Gen. Stat. § 20-183.8C(a)(2) stemmed from its belief that the record developed during the administrative process did not support the agency's finding that Mr. LaClaire had intentionally used "a test-defeating strategy" when inspecting Ms. Beasley's vehicle.  In his brief, the Commissioner contends that the trial court erred by reversing the final agency decision on the grounds that the record, when

---

[2]The difference between the original order and the amended order stems from the inclusion of additional language allowing the Commissioner's motion to quash Petitioners' subpoenas, an issue that is not before us on appeal.  As a result, the two orders are identical for purposes of our review of the Commissioner's challenge to the trial court's decision.

viewed in accordance with the applicable standard of review does, contrary to the trial court's decision, support a determination that Petitioners unlawfully "clean scanned" Ms. Beasley's 2007 burgundy Chevrolet HHR on 27 April 2011. The Commissioner's contention has merit.

## A. Statutory Violations

According to N.C. Gen. Stat. § 20-183.8C(a)(2), the "[u]se [of] a test-defeating strategy when conducting an emissions inspection by changing the emissions standards for a vehicle by . . . using data provided by the on-board diagnostic (OBD) equipment of another vehicle to achieve a passing result" constitutes a Type I violation. In the event that an emissions inspector mechanic commits a first or second Type I violation, the Commissioner is required to asses a civil penalty of $100.00 and to suspend the mechanic's license for 180 days. Similarly, in the event that an emissions inspection station commits a first or second Type I violation, the Commissioner must assess a civil penalty of $250.00 and suspend the station's license for 180 days. N.C. Gen. Stat. § 20-183.8B(b)(1). "A violation by an emissions inspector mechanic is considered a violation by the station or self-inspector for whom the mechanic is employed." N.C. Gen. Stat. § 20-183.8B(c). Thus, the ultimate question before the trial court on review of the Commissioner's decision

was whether the record supported a determination that Mr. LaClaire had unlawfully used a "test-defeating strategy" during the emissions inspection that he performed upon Ms. Beasley's 2007 burgundy Chevrolet HHR on 27 April 2011.

### B. Standard of Review

According to N.C. Gen. Stat. § 150B-51(b), a reviewing court "may . . . reverse or modify" an agency decision in the event that "the substantial rights of the petitioners may have been prejudiced because the [agency's] findings, inferences, conclusions, or decisions" are: "(1) [i]n violation of constitutional provisions;" "(2) [i]n excess of the statutory authority or jurisdiction of the agency or administrative law judge;" "(3) [m]ade upon unlawful procedure;" "(4) [a]ffected by other error of law;" "(5) [u]nsupported by substantial evidence . . . in view of the entire record as submitted;" or "(6) [a]rbitrary, capricious or an abuse of discretion."[3]  "With regard to asserted errors pursuant to subdivisions (5) and (6) of subsection (b) of this section, the court shall conduct its review of the final decision using the whole record standard of review." N.C. Gen. Stat. § 150B-51(c). "As to appellate review of a superior court order regarding an agency decision, 'the

---

[3]Although the General Assembly has made significant modifications to the Administrative Procedures Act in recent years, those recent amendments have not materially modified the applicable standard of review for purposes of this proceeding.

appellate court examines the trial court's order for error of law. The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.'" *ACT-UP Triangle v. Commission for Health Servs.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (quoting *Amanini v. N.C. Dep't of Human Resources*, 114 N.C. App. 668, 675, 443 S.E.2d 114, 118-19 (1994)). As a result of the fact that Petitioners challenged the agency's decision in their petition for judicial review on the grounds that the record did not support a determination that they intentionally utilized a "test-defeating strategy" in connection with the inspection of Ms. Beasley's vehicle and the fact that the trial court, "[a]fter reviewing and considering the Petition[] for Judicial Review, the documents and legal authority submitted by the parties, the arguments made by the parties, and a review of the record," determined that the agency's decision should be reversed "pursuant to [N.C. Gen. Stat. §] 150B-51(b)(5)," the trial court appears to have utilized the appropriate standard of review in concluding that the Commissioner's decision to sanction Petitioners should be overturned. As a result, the only remaining issue before us in this proceeding is whether the trial court correctly applied the applicable standard of review.

As we have already noted, the essential thrust of the trial court's decision to overturn the agency's decision stemmed from a determination that the agency's decision lacked sufficient record support. In the event that an appealing party "questions [] whether the agency's decision was supported by the evidence . . . the reviewing court must apply the 'whole record' test." *In re Appeal by McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993). In applying the "whole record test," a reviewing court must "examine all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by 'substantial evidence.'" *Amanini*, 114 N.C. App. at 674, 443 S.E.2d at 118. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State ex rel. Comm'r of Ins. v. N.C. Fire Ins. Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977). "Significantly, the whole record test requires the court to consider both evidence justifying the agency's decision and contrary evidence that could lead to a different result." *Cole v. Faulkner*, 155 N.C. App. 592, 597, 573 S.E.2d 614, 617 (2002). However, "[t]he 'whole record' test does not allow the reviewing court to replace the [agency's] judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been

before it *de novo*." *Thompson v. Wake County. Bd. of Educ.*, 292
N.C. 406, 410, 233 S.E.2d 538, 541 (1977). As a result, we must
now examine the evidence contained in the administrative record
for the purpose of determining whether it supports the agency's
determination that Petitioners utilized a "test-defeating
strategy" in the course of the inspection that Mr. LaClaire
performed upon Ms. Beasley's 2007 burgundy Chevrolet HHR.

C. Evidentiary Support for the Agency's Decision

A careful review of the record developed before the agency
demonstrates the existence of ample support for the
Commissioner's decision that Mr. LaClaire violated N.C. Gen.
Stat. § 20-183.8C(a)(2) by intentionally using a "test-defeating
strategy" during the process of inspecting Ms. Beasley's
Chevrolet HHR.[4] More specifically, Inspector Carter obtained and
presented records demonstrating that Ms. Beasley's Chevrolet HHR
had a matching VIN and PCM-VIN of 3GNDA13D57S617293 both before
and after the purported inspection at issue in this case and
that, at the time that Mr. LaClaire inspected Ms. Beasley's

---

[4]In their briefs, the parties have spent considerable energy
debating the extent, if any, to which a licensed individual or
inspection station did or did not need to have intentionally
"clean scanned" a vehicle in order for the agency to lawfully
find the existence of a Type 1 violation and impose sanctions of
the type at issue here. We need not, however, resolve this
dispute given the fact that the record contains ample support
for a finding that Mr. LaClaire's conduct was intentional in
nature.

Chevrolet HHR on 27 April 2011, the reported PCM-VIN differed from the reported VIN. In addition, Inspector Carter discovered that the PCM-VIN reported in connection with the 27 April 2011 inspection was associated with a 2008 white Chevrolet HHR that had previously passed an emissions inspection in March 2011 while reporting matching VIN and PCM-VIN numbers of 3GNDA13D08S617431 and that this 2008 white Chevrolet HHR happened to be located on the lot at Sammy's Auto Sales at the time that Ms. Beasley's vehicle was allegedly inspected. As a result, the record clearly supports an inference that the emissions test results reported for Ms. Beasley's Chevrolet HHR on 27 April 2011 resulted from an analysis of the 2008 white Chevrolet HHR instead of an analysis performed upon Ms. Beasley's vehicle.

In addition, the record contains ample support for a conclusion that the presence of the PCM-VIN associated with the 2008 white Chevrolet HHR on the report associated with the 27 April 2011 emissions inspection of Ms. Beasley's vehicle was not accidental or inadvertent. Mr. LaClaire had inspected the 2008 white Chevrolet HHR with which the PCM-VIN shown on the report resulting from the 27 April 2011 test of Ms. Beasley's vehicle was associated in March 2011, so he knew that vehicle would pass the required emissions inspection. In addition, Mr. LaClaire

admitted to Inspector Carter that he had been frustrated by the fact that the "check engine" light in Ms. Beasley's vehicle remained illuminated and by his concomitant inability to get Ms. Beasley's vehicle to pass the required emissions inspection. Although Ms. Beasley's vehicle managed to pass an emissions inspection on 27 April 2011, the "check engine" light in her vehicle remained on after the inspection had been completed. In fact, the "check engine" light in Ms. Beasley's Chevrolet HHR remained on and Ms. Beasley's vehicle reported emissions-related trouble codes at the time that Inspector Carter was investigating the allegations that had been made against Mr. LaClaire and Sammy's Auto Sales. As a result, we have no difficulty in concluding that the record contains substantial evidentiary support for the Commissioner's decision that Mr. LaClaire violated N.C. Gen. Stat. § 20-183.8C(a)(2) on 27 April 2011 by intentionally performing a "clean scan" on Ms. Beasley's 2007 burgundy Chevrolet HHR in the course of the 27 April 2011 inspection.

In seeking to persuade us to reach a different result, Petitioners argue that the record did not support an inference that Mr. LaClaire intentionally tested the 2008 white Chevrolet HHR rather than Ms. Beasley's 2007 burgundy Chevrolet HHR and that the discrepancies in the VIN and PCM-VIN associated with

the 27 April 2011 inspection simply reflected the negligent testing of the wrong vehicle stemming from the fact that the two vehicles were located approximately 20 feet apart in adjoining service bays. In order to reach this result, however, we would have to make a determination that the testimony of Mr. LaClaire was credible, a result that we are not permitted to make in applying the whole record test. Although the record certainly contains direct evidence in the form of testimony from Mr. LaClaire tending to support Petitioners' explanation for the differences in the VIN and PCM-VIN results associated with the 27 April 2011 inspection, it also contains evidence from which the Commissioner could have reasonably concluded that Mr. LaClaire intentionally "clean scanned" Ms. Beasley's vehicle due to his frustration arising from his apparent inability to address the problem that was causing the "check engine" light in that vehicle to remain on. In other words, although the Commissioner might reasonably have concluded, based on the direct evidence contained in Mr. LaClaire's testimony, that the discrepancy in the VIN and PCM-VIN numbers associated with the 27 April 2011 inspection resulted from inadvertent rather than intentional conduct, he was not required to do so given the existence of the substantial circumstantial evidence in the record that tended to show that Mr. LaClaire's claim of

negligence was not credible. As a result, given the fact that the record contains substantial evidentiary support for the result reached by the Commissioner and the fact that "[t]he 'whole record' test does not allow the reviewing court to replace the [agency's] judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*," *Thompson*, 292 N.C. at 410, 233 S.E.2d at 541, we hold that the trial court erred by reversing the Commissioner's decision that Petitioners violated N.C. Gen. Stat. § 20-183.8C(a)(2) by intentionally performing a "clean scan" of Ms. Beasley's vehicle.[5]

## III. Conclusion

As a result, for the reasons set forth above, we conclude that the trial court erred by reversing the Commissioner's decision to uphold the imposition of sanctions against Petitioners. As a result, the trial court's order and amended order should be, and hereby are, reversed.

REVERSED.

---

[5]As we have already noted, a violation by an emissions inspector mechanic constitutes a violation by the emissions inspection station by whom that mechanic is employed. N.C. Gen. Stat. § 20-183.8B(c). For that reason, a determination that Mr. LaClaire had intentionally "clean scanned" Ms. Beasley's vehicle necessitated the imposition of sanctions on Sammy's Auto Sales as well as the imposition of sanctions on Mr. LaClaire.

Chief Judge MARTIN and Judge McCULLOUGH concur.

Report per Rule 30(e).